610 A.2d 481

**The FIDELITY BANK**

v.

**Winchell Smith CARROLL and Patricia Ann McClure Carroll.**

**Appeal of Patricia Ann McClure CARROLL.**

Superior Court of Pennsylvania.

Argued April 23, 1992.

Filed July 7, 1992.

Arthur R. Littleton, Philadelphia, for appellant.

Daniel S. Bernheim, III, Philadelphia, for appellee.

Before ROWLEY, P.J., and MONTEMURO and POPOVICH, JJ.

MONTEMURO, Judge:

Pursuant to a divorce decree, appellant, Patricia Ann Carroll, was awarded title to the marital home and directed to place the home on the market with the proceeds to be divided seventy-five percent to appellant and the remaining twenty-five percent to her former husband. To facilitate the sale, appellant moved to quiet title her claim to the property. Her motion was challenged by appellee, the Fidelity Bank ("Bank"), a creditor of Mr. Carroll,[1] and subsequently denied by the trial court. On appeal, appellant asserts that the trial court erred in denying her motion because once she and her former husband separated, a later judgement entered solely against Mr. Carroll did not create a lien on the marital property. We agree and accordingly, reverse the order of the trial court.

This appeal arises from a procedural morass encompassing a divorce proceeding, a writ of execution and a motion to quiet title. The events giving rise to this dispute began in 1984 when appellant and Mr. Carroll relocated to Villanova, Pennsylvania and purchased a home, not as tenants by the entireties, but rather as tenants in common. Shortly thereafter, Mr. Carroll obtained an unsecured demand note in the amount of $40,000 from the Bank and a an unsecured

---

1. The loan documents at issue are signed by both Mr. Carroll and appellant; however, at the trial court level there was a dispute as to whether appellant's signature was a forgery. It now appears that the Bank has abandoned its claim against appellant and is looking solely to Mr. Carroll for satisfaction of the debts.

credit line of $50,000.[2] Mr. Carroll failed to make the required payments and was declared in default on both loans during July of 1987.

On July 15, 1987, the Carrolls separated and two days later, Mrs. Carroll filed for divorce. Subsequently, the trial court entered an order on August 17, 1987, permanently enjoining Mr. Carroll from encumbering, alienating, transferring or selling any of the Carrolls' real or personal property.

Meanwhile, the Bank was continuing its efforts to collect on the unpaid loans and eventually instituted a collection action against Mr. Carroll on November 10, 1987. On March 2, 1988, the Bank and Mr. Carroll entered into an agreement whereby, Mr. Carroll agreed to allow the bank to take a default judgement in its collection action and the bank agreed that it would forebear executing on the marital home provided the property was listed for sale. A default judgement was then taken against Mr. Carroll on March 7, 1988.

When Mr. Carroll failed to place the marital residence on the market, the Bank filed and served a writ of execution on appellant seeking to garnish all of Mr. Carroll's personal property which was then in appellant's possession. Appellant petitioned the court to stay the writ pending equitable distribution of the marital property. This motion was granted. The Bank then made an unsuccessful bid to intervene in the divorce action.

Eventually, appellant and Mr. Carroll were able to agree on a mutually acceptable division of the marital property. Their agreement was incorporated into the divorce decree which was entered on October 29, 1990. Entry of the decree activated an earlier order of the trial court which provided that the stay would be vacated upon entry of a divorce decree. Although the stay was vacated, the Bank

2. Mr. Carroll also obtained unsecured loans from Provident Bank and First Pennsylvania Bank. Although neither of these banks is a party to the instant dispute, they have agreed to be bound by the outcome.

did not attempt to satisfy its judgement by executing on Mr. Carroll's personal property.

Upon learning of the terms of the equitable distribution, the Bank advised appellant that it believed that its judgements against Mr. Carroll were valid liens against the marital home. Appellant disagreed and the parties stipulated that they would resolve this matter by submitting the issue to the trial court as a motion to quiet title.[3] The trial court denied this motion and validated the judgement liens of the various banks. This appeal followed.

■ Initially, we note that when reviewing a decision from a quiet title action, an appellate court will ordinarily not reverse the trial court's determination absent an error of law or a capricious disregard of the evidence. *Klebach v. Mellon Bank, N.A.*, 388 Pa.Super. 203, 207, 565 A.2d 448, 450 (1989), *alloc. granted*, 527 Pa. 647, 593 A.2d 420 (1990). Here, we find that the trial court committed an error of law when it denied appellant's motion to quiet title.

■ Under the Divorce Code, 23 Pa.C.S.A. § 3101 *et seq.*, it is presumed that all real and personal property acquired by the parties during marriage is marital property regardless of whether the property is held individually or by some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety, 23 Pa.C.S.A. § 3501(b), and all such property is subject to equitable distribution upon request of either party, 23 Pa.C.S.A. § 3502(a). However, to the extent that any marital property has been mortgaged or encumbered prior to the date of final separation, it is not available for distribution. 23 Pa.C.S.A. § 3501(a)(7).

Here, the marital residence was neither mortgaged nor encumbered when the parties separated. Thus, it is pre-

---

**3.** We note that although this action is docketed at the trial court level as a writ of execution against the personal property of Winchell Smith Carroll, the parties stipulated that the trial court could determine appellant's title to the marital residence via a motion to quiet title. Thus, the parties bypassed the procedural requirements for a quiet title action as set forth by our Supreme Court at Pa.R.Civ.P. 1061–68.

sumed that the entire property is available for equitable distribution.

██ When appellant initiated the divorce action, all marital property was placed under the trial court's jurisdiction. As such, the property was in *custodia legis,* or under wardship of the court, pending the outcome of the divorce proceeding: *See Klebach, supra* (entireties property subject to judicial order of divorce court is in *custodia legis* ); *Buchholz v. Cam,* 288 Pa.Super. 33, 430 A.2d 1199 (1981) (funds in the possession of Commonwealth and owing to individuals are held in *custodia legis* ). In Pennsylvania, property so held is not subject to attachment by judicial liens. *Klebach, supra; Buchholz, supra.*

██ When the doctrine of *custodia legis* is applied to the facts of the instant case, it is apparent that the Bank's liens do not attach to the marital home. Here, appellant filed for divorce on July 17, 1987; however, the bank did not enter a judgement against Mr. Carroll until March 18, 1988. Because the marital home was then under the court's jurisdiction, the Bank's judgement did not attach. *Klebach, supra; Buchholz, supra.*

At the time the Bank's judgement was filed, the marital residence was the subject of equitable distribution in the pending divorce action. Therefore, the Bank was aware, at least constructively, that Mr. Carroll's interest in the property was involved in divorce litigation and subject to distribution by the court. Accordingly, the Bank could acquire no greater interest in the marital home than that of Mr. Carroll and the Bank only succeeds to whatever Mr. Carroll's interest in the marital property turns out to be. *Weaver v. Weaver,* 413 Pa.Super. 382, 605 A.2d 410 (1992). Here, it turns out that Mr. Carroll has no interest in the marital home. Therefore, the Bank also has no interest in the home. *Id.*

The Bank asserts that such a result is in direct contradiction with The Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.,* and the Federal Reserve Board's Regulation

B which prohibit lenders from requesting the signatures of both spouses on loan documents when one spouse is borrowing individually and that spouse is credit worthy. This argument has no merit. Here, the Bank made *unsecured* loans to Mr. Carroll. There was nothing to prevent the Bank from requiring that Mr. Carroll use his interest in the marital home as collateral for the loans. However, the Bank elected to not secure its loans and therefore, must accept the consequences of its actions.[4]

Finally, we note that the trial court's order effectively modifies the Carrolls' divorce decree. Now, instead of receiving seventy-five percent of the proceeds from the sale of the marital home, appellant's portion of the proceeds has been reduced by the Bank's judgements. Such a result would permanently defeat the distribution of property set forth in the divorce decree because once a decree has been entered, it cannot be opened or vacated except under very limited circumstances.[5] Thus, the trial court's order has

4. Although the Bank did attempt to protect its interests by intervening in the Carrolls' divorce, it had an additional remedy which it neglected to pursue. Under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, it may have been possible for the Bank to force Mr. Carroll into involuntary bankruptcy. 11 U.S.C. § 303(b). If the Bank was successful, the divorce proceeding would have been stayed pending resolution of the claims of Mr. Carrolls various creditors. 11 U.S.C. § 362. *See In re Wilson*, 85 B.R. 722 (E.D.Pa.1988) (stay of divorce proceeding lifted, but court notes that the trustee in bankruptcy may wish to participate in the divorce as current owner of the property); *In re Zeits*, 79 Bankr. 222 (E.D.Pa.1987) (property distribution stayed pending resolution of the bankruptcy proceeding).

5. The Divorce Code provides that:
 a motion to open a decree of divorce or annulment may be made only within [thirty days after entry of the decree] and not thereafter. The motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence relating to the cause of action which will sustain an attack on its validity. A motion to vacate a decree or strike a judgement alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent on the face of the record must be made within five years after entry of the final decree. Intrinsic fraud relates to a matter adjudicated by the judgement, including perjury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgement which have the consequence of precluding a fair hearing or presentation of one side of the case.

undone the economic justice contemplated by the divorce decree.

Order of the trial court reversed and cause remanded for entry of an order quieting appellant's title to the marital home. Jurisdiction relinquished.