633 A.2d 165

**KEYSTONE SAVINGS ASSOCIATION, Appellant,**

v.

**Dennis A. KITSOCK, Appellee.**

Superior Court of Pennsylvania.

Argued May 13, 1993.

Filed Oct. 18, 1993.

562

William F. Brodt, Jr., Bethlehem, for appellant.

Ronald R. Pellish, Pottsville, for appellee.

Before BECK, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Schuykill County by which the court granted Donna M. Freeman's petition to set aside the sheriff's sale and permanently stayed any further proceedings in relation to the property in question. We affirm.

The record reveals the following facts: On July 19, 1976, Donna M. Freeman (formerly Donna M. Kitsock) and Dennis A. Kitsock acquired the property in question, their marital residence, as tenants by the entirety. On December 4, 1985, Donna commenced an action for divorce and equitable distribution in Schuykill County. On March 14, 1988, Keystone loaned $60,000 to Dennis.[1] The case was bifurcated and on December 16, 1988, a decree in divorce was entered. On April 17, 1989, Keystone filed suit against Dennis to recover the $60,000 plus interest, averring that Dennis had not made any payments as set forth in the promissory note he executed on March 14, 1988.[2]

On October 5, 1989, the master's recommendation was filed and awarded, *inter alia*, the marital residence to Donna. Dennis then filed exceptions to the master's report. On

---

1. Keystone originally alleged that the loan of $60,000 was secured by a mortgage on the marital residence. However, Donna maintains that she never signed the mortgage instrument and, if her signature did appear on the document, it was a forgery. Keystone does not dispute Donna's assertion of forgery. Further, Keystone acknowledges that it never recorded the mortgage because it was allegedly lost. Consequently, Keystone has not asserted that it was a secured creditor of Dennis and/or Donna.

2. In the complaint, Keystone did not aver that a mortgage or any other security agreement existed.

March 12, 1990, the prothonotary entered a default judgment against Dennis for his failure to answer Keystone's complaint. On May 23, 1990, the court dismissed Dennis' exception to the master's report. The following day, the court distributed the marital property and directed Dennis to execute the deed to transfer the marital residence to Donna solely.

On June 1, 1990, Keystone filed a praecipe for writ of execution against Dennis' "undivided one-half interest" in the marital residence, executed on that writ and gave notice of the sheriff's sale. On June 15, 1990, Donna filed a petition to set aside the sheriff's sale, and a rule was issued to Keystone to show why the petition should not be granted. Following briefing and argument by counsel for Keystone and Donna, the lower court set aside the sheriff's sale and permanently stayed any further attempts by Keystone to execute on the former marital residence. This appeal followed.[3]

Herein, Keystone submits that the lower court erred in permanently staying the sheriff's sale of the property in question. Keystone contends first that the divorce court's power to distribute the marital estate violated its due process rights. Second, Keystone argues that charging it with constructive notice of the divorce proceedings violates its due process rights. And third, Keystone suggests that the doctrine of "custodia legis" should not usurp the basic property rights of creditors. A court in which execution proceedings are pending has an inherent right to stay the proceedings where it is necessary to protect the rights of the parties. Pa.R.C.P. 3121. "The grant of a stay of execution is within the sound discretion of the trial court, and its decision will not be disturbed absent a clear abuse of that discretion." *Kronz v. Kronz*, 393 Pa.Super. 227, 233, 574 A.2d 91, 94 (1990), quoting *In re Upset Sale, Tax Claim Bureau of Berks*, 505 Pa. 327, 339, 479 A.2d 940, 946 (1984). Upon review, we find that the lower court acted properly and did not abuse its discretion in staying the proceedings.

3. On August 1, 1990, the court authorized the prothonotary to execute the deed of conveyance to Donna on behalf of Dennis.

Keystone cites *Kronz, supra,* for the proposition that its due process rights were violated because the court's stay of the sheriff's sale impaired Keystone's substantive rights as a judgment creditor without providing for adequate security.[4] However, the facts of *Kronz, supra,* represent a vastly different situation than the one before us. In *Kronz, supra,* the husband and wife had mortgaged the commercial property in question and agreed to be held jointly and severally liable for the debt. After the parties separated and filed for divorce, the mortgage went into default, and foreclosure proceedings were initiated. The premises had been scheduled for sheriff's sale when the wife petitioned the divorce court to enjoin the sale because the property's value of $650,000 was far in excess of the judgment of $230,000. Eventually, the mortgagee was indefinitely enjoined from further executing on its judgment. Upon review, we stated:

... As a general rule, a court cannot properly impair the contractual rights of a secured creditor or impose upon it duties and obligations which it did not contract to assume. A court abuses its discretion if, by its order, it impairs the collateral security which a creditor has contracted for in a loan transaction. ...

The evidence is that the mortgaged premises have a market value of between $650,000.00 and $750,000.00. The bank's judgment is for only $230,000.00. There is, therefore, a substantial equity in the property on which the bank has issued execution. This equity is deserving of protection if the court can do so without impairing the substantive rights which have accrued to the secured creditor. *Sinking Fund Commissioners of Philadelphia v. Philadelphia,* [324 Pa. 129, 188 A. 314 (1936)], *supra.* However, a court may not deprive the judgment holder of substantive rights, for to

4. We chastise counsel for Keystone for quoting West head-note 11 of *Kronz, supra,* in its brief at p. 22, as if the language of the headnote was actually taken from the body of our opinion. Counsel certainly should understand that the head-notes are not part of our opinion, but rather are prepared by West Publishing Company. In the future, counsel must refrain from misrepresenting language contained in a West head-note to be language from the body of an opinion.

do so is a violation of due process. *Id.* 324 Pa. [129,] at 133–1334, 188 A. [314,] at 317 [ (1936) ].

*Kronz,* 574 A.2d at 95.

We determined then that the lower court in *Kronz, supra,* failed to insure the substantive rights of the mortgagee/judgment holder were adequately protected when it indefinitely enjoined the sheriff's sale, thus, violating the lender's right to due process. We stated:

To summarize, the court set no time limit for its order enjoining the mortgagee from enforcing its contractual rights. There is no guarantee that the real estate will be sold in the near future at a price satisfactory to husband and wife. Although there are other marital assets available to pay or secure the mortgagee's judgment, the court did not require either payment or security. The effect of the court's order is to alter the substantive rights of the mortgagee and to impose upon the mortgagee the risk of delay inherent in a divorce action whose movement the mortgagee is powerless to control.

*Kronz,* 574 A.2d at 95.

Clearly, the error committed by the lower court in *Kronz, supra,* was not the act of enjoining the sheriff's sale. Rather, the court's error was indefinitely enjoining the sale *without adequately protecting the substantive rights of the secured creditor/judgment holder in the property which was the subject of the mortgage.* Instantly, however, Keystone cannot claim the same substantive rights in the subject property as the creditor in *Kronz, supra.* Keystone is not a secured creditor, has not obtained a judgment against both of the divorcing parties, and did not attempt to execute on that judgment until after the marital residence was awarded to Donna.

Keystone counters that, by operation of law, after the parties were divorced on December 16, 1988, the marital residence was held as tenants in common of equal one-half shares in value, and, therefore, it had a right to execute on Dennis' one-half share of the marital residence. This argu-

ment fails for two reasons. First, Keystone did not praecipe for a writ of execution until June 1, 1990, which was eight days after the lower court had awarded the marital residence to Donna. Therefore, Dennis had no interest in the marital residence at the time the writ was issued.

Second, notwithstanding the timing set forth above, the marital residence was in *custodia legis,* or under the wardship of the court pending the outcome of the equitable distribution proceedings, and, thus, not subject to judicial liens. *Klebach v. Mellon Bank, N.A.,* 388 Pa.Super. 203, 211, 565 A.2d 448, 452 (1989) allocatur granted, 527 Pa. 647, 593 A.2d 420 (1990); *Fidelity Bank v. Carroll,* 416 Pa.Super. 9, 13, 610 A.2d 481, 483 (1992). It is true that 68 Pa.S.A. § 501, provides that:

> Whenever any husband and wife, hereafter acquiring property as tenants by the entireties, shall be divorced, they shall thereafter hold such property as tenants in common of equal one-half shares in value and either of them may bring suit against the other to have the property sold and the proceeds divided between them.

See also 23 Pa.C.S.A. § 3507(a).

However, while 68 Pa.S.A. § 501 operates to sever a tenancy by the entireties upon entry of a divorce decree in a bifurcated divorce action, it does not alter the "marital" character of that property. *Jawork v. Jawork,* 378 Pa.Super. 89, 94–95, 548 A.2d 290, 292 (1988); *Klebach,* 565 A.2d at 451. Under the Divorce Code, 23 Pa.C.S.A. § 3101 *et seq.,* it is presumed that all real and person property acquired by the parties during the marriage is marital property, regardless of whether it is held individually or in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entireties. 23 Pa.C.S.A. § 3501(b). Further, all such property is subject to equitable distribution upon request by either party. 23 Pa.C.S.A. § 3502(a).

Instantly, the property in question was subject to equitable distribution proceedings in the lower court several years prior

to Keystone's unsecured loan to Dennis. As such, the property was in *custodia legis* and not subject to attachment by Keystone's judicial lien. *See, Fidelity Bank, supra* (bank judgment against former husband did not attach to marital home where judgment was entered after wife filed for divorce as property was in *custodia legis*); *Klebach, supra* (entireties property subject to judicial order of divorce court is in *custodia legis*). Since the property in question was subject to the jurisdiction of the divorce court at all times relevant to Keystone's loan transaction, Keystone was on constructive notice that Dennis' interest in the property was involved in divorce litigation and subject to distribution by the court. Accordingly, Keystone could acquire no greater interest in the marital property than that of Dennis, and Keystone only succeeded to whatever interest Dennis acquired in the marital property at the time of equitable distribution. *Fidelity Bank,* 610 A.2d at 483; *Weaver v. Weaver,* 413 Pa.Super. 382, 385, 605 A.2d 410, 412 (1992).[5]

Since Dennis was not awarded a share of the marital residence in the equitable distribution proceeding, Keystone had no enforceable interest in the property despite its judgment against Dennis. We find that there was no violation of due process herein since Keystone had no substantive rights in the property *sub judice.* Accordingly, we find that the trial court acted properly in staying indefinitely any further attempts on the part of Keystone to execute on the former

---

5. Keystone argues that it is a violation of due process to find that it had constructive notice that the property in question was the subject of divorce proceedings since it has to provide actual notice to owner of the property involved in a sheriff's sale. See Pa.R.C.P. 3129.1 and 3129.2. However, in making such an argument, Keystone fails to consider that the owner of a property clearly has substantive rights in the property subject to the judicial sale, while Keystone as an unsecured creditor had no substantive rights in the marital residence other than those it acquired through Dennis. *Fidelity Bank,* 610 A.2d at 483; *Weaver,* 605 A.2d at 412. Since the entire value of the marital residence was awarded to Donna, Keystone had no substantive rights in the property for due process to protect. Moreover, Keystone clearly could have easily learned that the marital residence was the subject of divorce proceedings prior to lending the money to Dennis by simply checking the docket in the Schuylkill County Court of Common Pleas.

marital residence.[6]

Order affirmed.

BECK, J., files a Concurring Statement.

BECK, Judge, concurring.

I concur in the result of the majority opinion whereby the trial court order permanently staying the sheriff's sale is affirmed. I agree that appellant-bank (Keystone) has no right to execute on the marital residence because it does not have a perfected lien against it, nor did it file a praecipe for writ of execution until after the court had awarded the property to appellee-wife. The bank, as judgment creditor of appellee's husband, could only execute against that which debtor-husband had. Despite Keystone's assertions to the contrary, at the time that the writ of execution was filed, husband no longer possessed an "undivided one-half interest" in the property.

I depart from my colleagues' analysis at the point where they hold that the trial court's order is affirmed based on the doctrine of *custodia legis*. The majority expressly states that its holding is not dependent upon the fact that Keystone failed to file its writ until after the trial court awarded the property to appellee. Instead, the majority explains, "notwithstanding the timing set forth above, the marital residence was in *custodia legis*, or under the wardship of the court pending the outcome of the equitable distribution proceedings, and, thus, not subject to judicial liens." (Maj. at 168).

I am concerned that the majority opinion has expanded the doctrine to unprecedented proportions so that it encompasses all of a couple's property prior to equitable distribution proceedings in a bifurcated divorce. Whether the doctrine should be at all applicable to marital property in a divorce action is

6. We note that Keystone could have protected its rights in the same manner by which the lender in *Kronz, supra*, did, i.e., Keystone could have insured that a mortgage on the property was validly executed by both Dennis and Donna and properly recorded. See 23 Pa.C.S.A. §§ 3501(a)(7) and 3507.

questionable. *See Klebach v. Mellon Bank, N.A.*, 388 Pa.Super. 203, 565 A.2d 448 (1989) (Johnson, J. dissenting), *alloc. granted*, 527 Pa. 647, 593 A.2d 420 (1990). Historically, the concept of *custodia legis* addressed circumstances where a sheriff or other officer of the court was in possession of personal property as a result of an action in replevin.[1] *See Weicht v. Automobile Banking Corp.*, 354 Pa. 433, 47 A.2d 705 (1946). It has also been held to apply to circumstances where law enforcement officers have searched a residence, seized drugs and cash therein and held the cash until time of trial. *See Commonwealth v. Myers*, 298 Pa.Super. 272, 444 A.2d 1170 (1982).

Notwithstanding the origins of the doctrine, I am cognizant that previous panels of this court have made it applicable in suits relating to marital property. However, in both cases cited by the majority, the marital property which was deemed in *custodia legis* was the subject of a specific court order. In *Fidelity Bank v. Carroll*, 416 Pa.Super. 9, 610 A.2d 481 (1992), the court had entered an order permanently enjoining husband from encumbering, alienating, transferring or selling any of the marital property; only after this order did the bank (husband's judgment creditor) attempt to execute upon the property.

Similarly, in *Klebach v. Mellon Bank, N.A., supra,* the trial court entered the divorce decree and directed the debtor-husband to convey his interest in the family residence to his wife. The conveyance took place five days later. This court held that the creditor's lien could not have attached during the five day period because under the doctrine of *custodia legis,*

1. The term *custodia legis* is defined as follows:
   In the custody of the law. Doctrine of *"custodia legis"* provides that when personal property is repossessed under writ of replevin, property is considered to be in custody of the court, though actual possession may be in either of the parties to the replevin action, and that property remains in custody of court until judgment in replevin action finally determines whether replevining party or prior holder is entitled to possession.
   Black's Law Dictionary 346 (5th ed. 1979).

the property was immune from attachment.[2]

A bifurcated divorce unfortunately can take years, sometimes more than a decade, to be fully litigated. I believe it would unjustly bind the parties' hands if all marital property were automatically deemed *custodia legis* during the entire divorce action. If this were the case, a spouse who owns a business, for example, would not be able to run the business effectively as she would be endlessly petitioning the court for approval of transactions and business decisions that potentially affect the value of the business.

While I recognize the danger that a party in a divorce might attempt to dissipate his or her assets in order to prevent them from being awarded to the other spouse, there are alternative devices to protect against this result. Where, for example, there is some indication of foul play, intentional waste, or even innocent but unwise business practices, a party can always petition the court for special relief or protection.

Thus, for the reasons set forth above, I concur only in the result of the majority opinion and strenuously dissent from my colleagues' holding that the marital residence is *custodia legis* merely because equitable distribution is pending.

---

**2.** The creditor's lien could not have attached prior to the divorce decree because at that time the couple owned the property by the entireties; such property is "simply unavailable to satisfy claims of a creditor of only one [spouse]." *Klebach, supra,* 388 Pa.Super. at 209, 565 A.2d at 450 (citing *Patwardhan v. Brabant,* 294 Pa.Super. 129, 439 A.2d 784 (1982)).