In re Howard W. BENNETT, Debtor.

Nancy L. BENNETT, Plaintiff,

v.

Howard W. BENNETT, Defendant.

Bankruptcy No. 94–10039 DWS.
Adv. No. 94–0269.

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 13, 1994.

Jeffrey A. Fournier, Bristol, PA, for debtor/defendant.

Michael P. Kelly, Langhorne, PA, for plaintiff.

Michael Kaliner, Chapter 7 Trustee, Fairless Hills, PA.

Joseph Minni, U.S. Trustee, Philadelphia, PA.

## OPINION

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is Nancy L. Bennett's (the "Plaintiff") Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 727(b) and 523(a)(5) (the "Complaint").[1] Plaintiff is the Debtor's estranged wife, having initiated a divorce proceeding in state court prior to the Debtor's bankruptcy filing. Plaintiff seeks a determination from this Court that her claim to the Debtor's pension is not dischargeable under (1) 11 U.S.C. § 727(b) because it is not a pre-petition debt or alternatively (2) 11 U.S.C. § 523(a)(5) because it is a debt in the nature of alimony to, maintenance for, or support of a spouse. We agree with Plaintiff that her interest in the Debtor's pension is not dischargeable but not for the reasons she has posited. Rather, we conclude that Plaintiff's marital interest in the Debtor's pension plan is not a claim against the Debtor and therefore not subject to discharge in bankruptcy.

## BACKGROUND.

The Plaintiff and Debtor were married on October 7, 1961. Stipulation ¶ 1. Beginning on August 25, 1955, and throughout the marriage, Debtor was and remains employed by Hill Refrigeration, Inc. as a factory production worker. Stipulation ¶ 3. The Debtor is currently 57 years old. Stipulation ¶ 5. The Debtor has rights in and to a pension plan from his employer (the "Pension Plan"). Under the Pension Plan, Debtor is eligible to receive benefits when he retires at the normal age of 65 or anytime now if he elects early retirement. Exhibit H. Plaintiff was a homemaker and is employed part time by Trenton Window Cleaning. Plaintiff has no rights in or to a pension plan from Trenton Window Cleaning. Stipulation ¶¶ 4, 22.

Plaintiff and Debtor separated November 3, 1988 and have maintained separate households since that time. Stipulation ¶ 7. On November 29, 1989, Plaintiff filed a no-fault divorce complaint with the Court of Common Pleas of Bucks County, Pennsylvania (the "State Court"). Stipulation ¶ 8, Exhibit A. At that time and now, the Plaintiff and Debtor had no written agreement as to alimony, property division and other financial matters. Stipulation ¶ 9. On December 26, 1990, Plaintiff filed a complaint for support, alimony, costs, attorneys fees and other claims in State Court. Stipulation ¶ 10 and Exhibit B. By order dated July 2, 1993, the State Court approved the grounds for divorce and determined the divorce action "to be ready for the resolution of all pending claims for alimony, equitable distribution of property, counsel fees and expenses." Stipulation ¶ 11, Exhibit C. Pursuant to an order dated August 27, 1993, the State Court awarded Plaintiff alimony *pendente lite* in the amount of $93.50 per week effective May 22, 1993. Stipulation, Exhibit D. No final divorce decree or equitable distribution of property order has been entered by the State Court.

On January 3, 1994, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code listing Plaintiff in his schedules and statements as an unsecured creditor. The Debtor amended his schedules and statements to include the Pension Plan which he then claimed as exempt under § 522(d)(10). Stipulation ¶ 16. Other than a mobile home which Plaintiff and the Debtor agree has *de minimis* equity and which they both have abandoned, the Debtor's chapter 7 estate has no assets. Thus, the focus of their dispute is the Pension Plan.

## DISCUSSION.

### I.

Code § 727 provides for the debtor's Chapter 7 discharge of, with specified exceptions, all *debts* that arose pre-petition. Thus, before considering Plaintiff's contention that a specified exception (ie. § 523(a)(5)) or the post-petition nature of her claim controls the outcome of this litigation, we must ask whether the Plaintiff's equitable distribution right to the Pension Plan, which but for the

---

1. At the request of the parties, this proceeding was decided on the pleadings, a Stipulation of Facts (the "Stipulation"), and the Exhibits thereto.

bankruptcy would have resulted in the non-debtor obtaining sole title to some of the marital property, is a debt. The equitable distribution rights of the dependent non-debtor if determined not to be vested property could be treated as an unsecured property settlement claim in the bankruptcy. Sommer and McGarrity, *Collier Family Law and the Bankruptcy Code* ¶ 6.02[3] at 6–9 (1994).

■ A debt means a liability on a claim. Bankruptcy Code § 101(12). The Bankruptcy Code defines "claim" in § 101(5) to mean:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

11 U.S.C. § 101(5). Cases interpreting § 101(5) have uniformly held that the definition of "claim" is to be interpreted broadly. *See, e.g., Torwico Electronics, Inc. v. State of New Jersey, Dept. of Env. Protection,* 8 F.3d 146, 148 (3d Cir.1993). However broad, the definition of claim is not without limits.

■ In order to determine whether a Plaintiff holds a claim, we need to examine applicable state law to understand the nature and extent of Plaintiff's interest in the Pension Plan. *See Grogan v. Garner,* 498 U.S. 279, 283, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991); *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). We begin with 23 Pa.C.S.A. § 3501(a) which defines what property constitutes marital property in the event of a divorce. "Marital property" shall mean "all property acquired by either party during the marriage," with certain exceptions which are not relevant here. Further, all real and personal property acquired by either party during a marriage is presumed to be marital property regardless of how title to the property is actually designated. 23 Pa.C.S.A. § 3501(b). *DiFlorido v. DiFlorido,* 459 Pa. 641, 331 A.2d 174 (1975).

Cases interpreting this general rule specifically hold that pension plans are marital property. *See Berrington v. Berrington,* 409 Pa.Super. 355, 598 A.2d 31 (1991), *aff'd,* 534 Pa. 393, 633 A.2d 589 (1993); *Zollars v. Zollars,* 397 Pa.Super. 204, 579 A.2d 1328 (1990), *appeal denied,* 527 Pa. 603, 589 A.2d 693 (1991); *Flynn v. Flynn,* 341 Pa.Super. 76, 491 A.2d 156 (1985). The Debtor conceded as much in his brief. Debtor's Brief at 8–9.

Also under Pennsylvania law, in an action for divorce, the court shall, upon the request of the parties, "equitably divide, distribute or assign" marital property. 23 Pa.S.C.A. § 3502. Here, the State Court determined, pursuant to its July 2, 1993 order, that the marital property was ready for equitable distribution. However, no order of distribution or agreement had been concluded at the time of the bankruptcy filing.

We do not believe that Plaintiff's right to seek equitable distribution of the Pension Plan gives her a claim. By initiating the divorce proceeding, Plaintiff did not obtain a right to monetary payments from the Debtor with respect to the Pension Plan. While she and Debtor could have entered into an agreement whereby Debtor would have agreed to make certain payment to her in satisfaction of her interest in the Pension Plan, that did not happen here. What Plaintiff has is the right to secure a court order determining the extent of her interest in the Pension Plan which when secured will under applicable law relating to pension plans be a basis to require the pension plan administrators of the Pension Plan to pay her directly. In *Wisniewski v. Piasecki (In re Piasecki),* 171 B.R. 49 (N.D.Ohio 1994), the court reasoned likewise in finding that an ex-spouse's independent ownership rights under her husband's pension plan had not created a debtor and creditor relationship between them. As stated by the court, "Without Defendant's election to pay Plaintiff in lieu of taking under the pension plan, there is no liability on a claim. The payment obligation is strictly between Plaintiff and the GMC pension plan administrator." *Id.* at 52.

The courts have been generally in agreement that equitable distribution rights in pension plans established by court order or agreement prior to bankruptcy are property interests of the non-debtor former spouse rather than claims dischargeable in bankruptcy. *See, e.g., Bush v. Taylor,* 912 F.2d 989, 993–94 (8th Cir.1990); *Benich v. Benich (In re Benich),* 811 F.2d 943 (5th Cir.1987); *In re Chandler,* 805 F.2d 555 (5th Cir.1986); *Teichman v. Teichman (In re Teichman),* 774 F.2d 1395, 1398 (9th Cir.1985); *Resare v. Resare,* 154 B.R. 399, 401 (D.R.I.1993);[2] *Long v. Donahue (In re Long),* 148 B.R. 904 (Bankr.W.D.Mo.1992); *Adamo v. Ledvinka (In re Ledvinka),* 144 B.R. 188, 191 (Bankr. M.D.Ga.1992); *Seligman v. Seligman,* 14 Cal.App. 4th 300, 18 Cal.Rptr.2d 209 (1993).

Several of these cases are particularly instructive. In *Long,* the parties' decree of dissolution which effected the divorce also divided the debtor's pensions between the parties. Because bankruptcy intervened before a qualified domestic relations order ("QDRO") was issued which would give the ex-spouse her enforceable interest in debtor's ERISA-qualified plan, the debtor contended that his ex-spouse's interest amounted to an unperfected judgment lien created by the divorce decree and was dischargeable as a debt arising from a property settlement. The court found otherwise, reasoning that the decree of dissolution gave the ex-spouse a right to obtain the QDRO and transfer legal ownership of her portion of the debtor's pensions awarded as marital property. "Prohibiting entry of the QDRO post-petition would not increase the assets of the estate available to creditors, but would only increase Debtor's pension interests at the expense of his former wife." 148 B.R. at 905. The court characterized the ex-spouse's act of obtaining the QDRO as "more akin to exercising a property right than to debt collection." *Id.* at 907–08. As such, she had something other than a right to payment from the debtor or his property which could not be classified as a debt. 148 B.R. at 908. In *Seligman,* a California state court consid-

ering the Bankruptcy Code's definition of "claim" as applied to community property exempted by a debtor spouse in bankruptcy concluded that "a court ordered division of community property does not give rise to a 'right to payment' of money" as specified in § 101(5). Because the wife's prospective obligations required performance, not payment, which performance, the court further concluded, could not be converted into a monetary payment, the husband did not hold a "claim" in the bankruptcy subject to discharge. The court noted that Debtor's pensions were excluded from property of the estate pursuant to § 541(c)(2). *Patterson v. Shumate,* —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).

## II.

■ Having determined that under Pennsylvania law the Plaintiff's rights in the Pension Plan are property interests, not claims does not, however, conclude our analysis. We must also consider just how far the former spouses's interest must be established at the time of the other spouse's bankruptcy in order to be unaffected by the rights created by the bankruptcy filing. Again that analysis is controlled by Pennsylvania law. *See Barnhill v. Johnson,* —— U.S. ——, ——, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992); *Butner,* 440 U.S. at 55, 99 S.Ct. at 918. *See also Collier Family Law and the Bankruptcy Code,* ¶ 7.06(2) at 7–36.

The status of the non-debtor spouse's interest in marital property when bankruptcy intervenes prior to the adjudication of equitable distribution was considered by my colleague the Honorable Bruce I. Fox in *In re Wilson,* 85 B.R. 722 (Bankr.E.D.Pa.1988). *Wilson* involved a motion for relief from the stay filed by the debtor's estranged wife seeking to continue state court litigation for equitable distribution of marital property. One of the issues raised in *Wilson* was whether the non-debtor spouse had a cognizable interest in an equitable division of the marital property if a bankruptcy petition was

---

**2.** *Bush, Benich, Teichman* and *Resare* involve military pensions which are subject to federal statute that provides for payment to the former spouse after appropriate court order. 10 U.S.C.

§ 1408. The former spouses having obtained such orders, the courts found their interests to be property rights, not debts.

filed after the divorce complaint was filed but prior to the state court determination of equitable distribution. Judge Fox concluded that "the state law right to seek equitable distribution 'vests' at the time the divorce proceeding is commenced and equitable distribution is requested." *Id.* at 726. Whether that vested interest in marital property not yet fixed by agreement or order would be cut off by the estranged spouse's subsequent bankruptcy filing was not addressed in *Wilson* but is the issue herein.

 In order to answer this question we need to first examine Pennsylvania law concerning the rights of a spouse during the period commencing with the divorce complaint and concluding with the order of equitable distribution. Upon the *initiation* of a divorce action in Pennsylvania, all marital property is placed under the trial court's jurisdiction. *Keystone Savings Association v. Kitsock,* 429 Pa.Super. 561, 633 A.2d 165 (1993); *Fidelity Bank v. Carroll,* 416 Pa.Super. 9, 610 A.2d 481 (1992); *Weaver v. Weaver,* 413 Pa.Super. 382, 605 A.2d 410 (1992). As such, the property is held "in *custodia legis,* or under the wardship of the court, pending the outcome of the divorce proceeding." *Carroll,* 416 Pa.Super. at 14, 610 A.2d at 483. Liens and judgments obtained against one spouse after the divorce proceeding is initiated but before an equitable distribution of marital property is decided by the court do not attach to the marital property. *Kitsock,* 429 Pa.Super. at 166, 633 A.2d at 168; *Carroll,* 416 Pa.Super. at 13, 610 A.2d at 483. Such liens against one spouse are subject to any obligations to convey the marital property imposed upon that spouse by the

divorce court. *Weaver,* 413 Pa.Super. at 386; 605 A.2d at 412.[3]

Two Pennsylvania bankruptcy courts have addressed the impact of a bankruptcy filing on the vested property interest of a non-debtor spouse prior to equitable distribution. In *Polliard v. Polliard (In re Polliard),* 152 B.R. 51 (Bankr.W.D.Pa.1993), the court concluded that the non-debtor spouse's vested interest in the debtor's share of the marital property, which was subject to an equitable distribution action commenced prior to the bankruptcy filing, was cut off by the bankruptcy filing where the domestic relations court had not, at the time of the bankruptcy, fixed the equitable distribution rights. The non-debtor spouse had only an unsecured claim in bankruptcy for an amount equal to any equitable distribution award of an interest in debtor's property. In reaching this conclusion, the court stated that if it held otherwise it feared that "spouses might intentionally give all of the property to the solvent spouse, leaving the insolvent spouse with nothing for his creditors." *Id.* at 54.[4]

In *In re McCulley,* 150 B.R. 358 (Bankr. M.D.Pa.1993), a husband and wife filed for divorce and thereafter they each filed separate Chapter 7 bankruptcy petitions. During the marriage, their residence was titled solely in the wife's name. The husband wanted to utilize the residential exemption under § 522(d)(1) in his Chapter 7 case by retaining $7500 in value out of his share of the marital residence. The court concluded that the husband's interest in the marital residence was no more than an unsecured claim because legal title on the date of the bankruptcy was in the wife's name, and the rights of the

**3.** As stated by the court in *Weaver,* the post-divorce filing judgment creditor "acquired no greater rights in the [marital property] than those of the debtor spouse. [The judgment creditor] succeeds only to that which the debtor spouse's interest in the marital property turns out to be." 413 Pa.Super. at 386, 605 A.2d at 412.

**4.** We do not find that it necessarily follows that a divorcing spouse would prefer his or her estranged spouse over his or her creditors. Concluding otherwise, the *Polliard* Court dismissed, as bad policy, the view of the Sixth Circuit Court of Appeals as expressed in *White v. White (In re*

*White),* 851 F.2d 170 (6th Cir.1988) that since state law, not the Bankruptcy Code, defines a debtor's interest in property, until the state court makes a determination of the property rights as between the debtor and the non-debtor spouse, what is property of the debtor's estate is unclear. In any event, that is not the situation here where the Debtor has claimed the Pension Plan as exempted from his estate. Following the rule in *Polliard,* the Debtor would be entitled to retain a 100% interest in the Pension Plan while conferring no benefit on creditors and effectively denying his estranged spouse her state law rights since her resulting claim would be dischargeable.

wife's trustee under § 544 would be superior to those of the non-titled husband.

We respectfully disagree with these decisions. The *Polliard* court was persuaded by the view of other courts that had held, based on the laws of other states, that "the non-debtor's interests in the debtor's share of marital property which are the subject of equitable distribution proceedings in a divorce action commenced prior to the bankruptcy filing, are cut off by the bankruptcy filing where the domestic relations court has not, at the time of the bankruptcy filing, fixed the equitable distribution rights by judgment." (citations omitted). *Polliard,* 152 B.R. at 54. The *Polliard* Court relied, *inter alia,* on *Perlow v. Perlow,* 128 B.R. 412 (E.D.N.C.1991) wherein the court adopted the reasoning of *In re Fisher,* 67 B.R. 666 (Bankr.Colo.1986)[5] to find that the vested property rights not "perfected" by the filing of a lis pendens giving notice of the divorce proceeding or the subject of execution proceedings were cut off by the bankruptcy filing. 128 B.R. at 415. In *Fisher,* the court recognized the trustee's status as a hypothetical lien creditor and hypothetical bona fide purchaser pursuant to § 544 and noted that the wife's failure to file a lis pendens to give notice of the divorce proceeding so as to perfect her vested right in the real property owned by the debtor would have allowed the husband debtor to convey his property free of his wife's vested interests. As such, it concluded that a judgment lien creditor or bona fide purchaser of real property would have taken title free and clear of the wife's interest under Colorado law which required the wife to establish a separate recorded interest in the real estate. Since Pennsylvania law does not require such a step to be taken to protect a spouse's interest in marital property, the underpinnings of the *Fisher* and *Perlow* decisions make their holdings inapplicable to a case decided under Pennsylvania law.[6]

■ The *Polliard* court, citing *Weaver* and *Carroll,* recognized the "bright line rule in Pennsylvania that the filing of a divorce wherein equitable distribution is requested automatically places all marital property in *custodia legis,* thus insulating it from claims of creditors." However, it found that line "blurred"[7] by the *Carroll* court's footnote that the creditor had the remedy, not utilized in that case, to force the husband into bankruptcy wherein "the divorce proceeding would have been stayed pending resolution of the claims of Mr. Carroll's various creditors."

**5.** The decision in *Fisher* was relied upon by the Court in *McCulley* for the same proposition. It was also relied upon by Judge Fox in *Wilson* but solely for the proposition that a non-debtor spouse's interest in the marital property vests upon the initiation of divorce proceedings.

**6.** The other cases relied upon by *Polliard* consider the non-debtor spouse's rights under New York law where at no point prior to judgment is there any contingent or present vested interest in marital property. *See In re Greewald,* 134 B.R. 729, 734 (Bankr.S.D.N.Y.1991). That is, of course, different from the law of Pennsylvania where a vested interest is created upon initiation of divorce proceedings.

**7.** Similarly, the *Polliard* court looked to the state court's decision in *Ibarra v. Prudential Property & Casualty Insurance Company,* 402 Pa.Super. 27, 585 A.2d 1119 (1990) to support the weakening of the theory that the filing of a divorce vests title in marital assets. In *Ibarra,* the state court concluded that the definition of "marital property" in the Pennsylvania Divorce Code could not be applied to determine the ownership of a motor vehicle for the purposes of Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. §§ 1701–1798.4 (1984) ("MVFRL"). 585 A.2d at 1120. The state court concluded that the provisions of the Divorce Code determine ownership for the purposes of "matrimonial causes", proceedings for divorce and court orders of equitable distribution, alimony pendente lite, alimony, and support but may not be applicable to other areas of the law. *Id.* at 1122. The Court's conclusion that the provisions of the MVFRL determine "ownership" for the purposes of financial responsibility for injuries in a car accident simply has no bearing on the status of a spouse's equitable distribution rights upon the filing of bankruptcy by her estranged spouse. Indeed *Ibarra* seems to direct us to apply the Divorce Code here. *Myers v. Myers,* 397 Pa.Super. 450, 580 A.2d 384 (1990), also relied upon by *Polliard,* provides no support for a change in the well grounded principle of *custodia legis.* That case made clear that the reason the former spouse's right to equitable distribution was abated by her spouse's death was that her right was tied to the divorce action which itself was abated by the death of the spouse. Since the divorce has been granted in this case and the equitable distribution was ripe for resolution when the bankruptcy was filed, *Myers* is not applicable here.

*Carroll,* 416 Pa.Super. at 14 n. 4, 610 A.2d at 483 n. 4. While stating its prior belief that bankruptcy law, enforcing state law, would give a trustee no greater rights than a judgment or execution creditor, the *Polliard* court then concluded that the "Superior Court's analysis would deny a lien to a judgment creditor but would yield to the powers of a bankruptcy trustee." 152 B.R. at 54. To the extent the state court was expressing that view, and we do not conclude that it was, it is simply incorrect as a matter of bankruptcy law which does not confer on the trustee, who takes property subject to all valid liens, claims and equities, any better title or right to the debtor's property than belongs to the debtor or his creditors at the time the case commenced. *Wilson,* 85 B.R. at 725–26. While § 544 gives the trustee certain additional powers, those rights and powers are those of a hypothetical judicial lien or execution creditor. Given the acknowledged inferiority of such a creditor's rights *vis a vis* the non-debtor spouse who has initiated divorce proceedings, it would be illogical to conclude that the trustee's rights would be greater.

■ Finally, to the extent the *Fisher* line of cases hold that filing a lis pendens would "perfect" the non-debtor spouse's interest, we note that in Pennsylvania, the initiation of a divorce proceeding does provide notice, at least constructively, that property may be subject to equitable distribution. In *Carroll, Weaver,* and *Kitsock,* the Pennsylvania Superior Court concluded that the filing of the divorce proceeding gave creditors constructive notice that marital property was involved in divorce litigation and subject to distribution by the court. *Carroll,* 416 Pa.Super. at 14, 610 A.2d at 483 ("At the time the Bank's judgment was filed, the marital residence was the subject of equitable distribution in the pending divorce action. Therefore, the Bank was aware, at least constructively, that Mr. Carroll's interest in the property was involved in divorce litigation and subject to distribution by the court."); *Weaver,* 413 Pa.Super. at 386, 605 A.2d at 412 ("When the ... judgment was filed, the record in the Prothonotary's office showed that the Weaver real estate was the subject of proceedings for equitable distribution in the pending di-

vorce action between the owners. Therefore, [the judgment lienor] was chargeable with the knowledge that the one-half interest against which he asserted a lien was involved in divorce litigation and was subject to distribution by the court."); *Kitsock,* 429 Pa.Super. at 166 n. 5, 633 A.2d at 168 n. 5. (The creditor clearly could have easily learned that the marital residence was the subject of divorce proceedings prior to lending money to the one spouse by simply checking the docket in the Court of Common Pleas.) A trustee under § 544 would similarly have constructive notice of the pending divorce action and equitable distribution and, like other creditors, would assume a position subject to the pending equitable distribution.

In *McCulley,* we also find that the Court, relying on *In re Fisher,* failed to give proper deference to the laws of Pennsylvania in determining the debtors' interest in the marital residence. In concluding that the debtor wife's fee simple interest in the residence was solely property of her estate, the court ignored the clear language of 23 Pa.C.S.A. § 3501(b) which states that *all* property acquired by either party during the marriage is presumed to be marital property "regardless of whether title is held individually, ...". Moreover, the court's citation to *In re Murray,* 31 B.R. 499, 502 (Bankr.E.D.Pa.1983), for the broad proposition that a bankruptcy court need not refer to the Pennsylvania divorce law is misplaced. In *Murray,* the bankruptcy court held, on what it later acknowledged to be "unique facts", that § 363(h) permitted the trustee to sell jointly owned or tenants in common property without regard to Pennsylvania divorce law. *See Wilson,* 85 B.R. at 725 (§ 363(j) requires division of proceeds of § 363(h) sale according to interests of debtor's spouse or co-owner as defined by state law); *Johnson v. Johnson (In re Johnson),* 51 B.R. 439, 443–44 (Bankr.E.D.Pa.1985) (leave granted for equitable distribution proceeding to proceed in state court so that debtor's interest in the property could be determined prior to bankruptcy court's determination of whether the elements of § 363(h) are satisfied).

### CONCLUSION.

We conclude that Plaintiff's rights in the Pension Plan are not claims at all and, therefore, they are not subject to discharge under § 727(b). Given this conclusion, Plaintiff's requested disposition under § 523(a)(5) is misplaced because § 523(a)(5) deals with *claims* arising under an agreement, order, or other property settlement document. For the same reason Plaintiff's argument that her rights in the Pension Plan are post-petition debts which are not subject to discharge under § 727(b) does not follow. Rather Plaintiff's rights in the Pension Plan are vested property interests enforceable under applicable state law against her spouse in bankruptcy.

An Order consistent with the foregoing Opinion will be entered.