**In re Larry MOSES, Debtor.**

**Bankruptcy No. 94–18412DWS.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 18, 1996.

Daniel B. Bernstein, Philadelphia, PA, for Debtor.

Geri H. Gallagher, Haverford, PA, for Susan Moses.

Michael Kaliner, Fairless Hills, PA, Chapter 7 Trustee.

Joseph Minni, Philadelphia, PA, U.S. Trustee.

## *OPINION*

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Joint Motion of Michael Kaliner, Trustee and Larry Moses, Debtor ("Movants") To Vacate Order of May 16, 1995 Granting Partial Relief Lifting Stay (the "Motion"). The Motion requires us to once again explore the murky confluence of state domestic relations law and federal bankruptcy law. *See In re Bennett,* 175 B.R. 181 (Bankr.E.D.Pa.1994). For the reasons stated below, the Motion is denied.

1. None of the parties sought to elicit testimony at the hearing on the Motion. The record in this contested matter consists of the averments of the Motion which have not been answered and therefore are deemed admitted.

2. Susan and the Debtor were not only marital partners but equal partners in a chiropractic practice which renders their dissolution more complicated than most.

## BACKGROUND

The relevant facts are undisputed.[1] On February 16, 1995 Susan Moses ("Susan"), Debtor's estranged wife, filed a Motion for Relief from Stay (the "Stay Motion") seeking "an Order vacating the automatic stay to permit the continuation of domestic relations proceedings with regard to support, dissolution, equitable distribution, special relief matters including the provision of an accounting and Husband's compliance with Court Orders."[2] On April 5, 1995, the Court entered an Order approving a Stipulation for Partial Relief from the Automatic Stay wherein the parties agreed that Susan would be granted relief to allow the state court domestic relations case to proceed with respect to issues of contempt, certain disputes regarding the chiropractic business, including the accounting, and all alimony, support and maintenance matters. Expressly excepted from the parties' agreement were the continuance of judicial proceedings relating to prepetition claims and equitable distribution which were the subject of a further hearing in this Court on May 16, 1995. At the conclusion of the hearing, we ordered (the "May 16 Order") "for the reasons stated on the record of the hearing" that "the automatic stay is vacated to permit the continuance of dissolution and equitable distribution proceedings, relief as to special matters having been previously ordered on 4/5/95 per the parties' Stipulation" but directed that "the parties shall return to the Bankruptcy Court for further proceedings, including matters relating to the liquidation of estate property and allowance and payment of claims."

The following facts are relevant to the May 16 Order which Movants now seek to vacate.[3] Debtor and Susan, both chiropractors, were married in 1979 and separated in August of 1992.[4] Divorce proceedings were

3. Movants provide no authority for their request to *vacate* this Order entered ten months ago nor do we find any basis to do so. Looking beyond the label attached to their request, we view this Motion as in effect a request to reimpose the stay. Since the Debtor has not raised any issue concerning the procedure used by the Movants, we will consider such matters waived.

4. All factual findings are derived from the pleadings filed in connection with the Stay Motion.

commenced by Susan on or about July 1993. As best as we can determine from this record, court involvement began in March 1994 when the Honorable Susan Devlin Scott, Judge of the Court of Common Pleas of Bucks County, Pennsylvania–Family Division (the "State Court") accepted an agreed order submitted in connection with Susan's Motion for Special Relief. While Judge Scott subsequently entered an order on May 13, 1994 addressing certain of the disputed issues, at the time of Debtor's filing under Chapter 7 on December 22, 1994, a full panoply of domestic relations matters was still unresolved.[5]

Although the order granting relief from stay was entered on May 16, 1995, apparently no progress was made in the State Court proceedings until August 23, 1995 when Susan's counsel filed an application for the appointment of a master. As of this date, no master has been appointed although the State Court held a hearing on the application on January 5, 1996. Prior to that date, on December 18, 1995, the Chapter 7 Trustee filed a Petition to Intervene in the State Court proceedings. Susan has filed an objection thereto contending that the Trustee's position would be protected by the pending bankruptcy case. The disputed intervention was raised before Judge Scott at the January 5 hearing following which the State Court granted Susan a continuance until May 8, 1996 to return to this Court to obtain "clarification" of the May 16, 1995 Order.[6] Susan having taken no such action. Movants filed the instant Motion on February 16, 1996.

Movants seek reimposition of the automatic stay for the purpose of having this Court "resume jurisdiction in full over any and all issues relating to equitable distribution, property settlement, etc., between the Trustee, the Debtor and Susan Moses." They contend such relief is warranted because of the delay Susan is causing in State Court and

because of her refusal to allow the Trustee to intervene in the State Court proceedings. We believe the Movants' proffered solution to their problems with Susan and the State Court proceedings to be overbroad. Rather we accept the invitation of Judge Scott to clarify the May 16 Order so she may continue her administration of the State Court proceedings in harmony with the Debtor's pending bankruptcy case.

## DISCUSSION

### A.

While bankruptcy courts are unwilling to relinquish control over the debtor's interest in marital property since that interest is property of the bankruptcy estate over which the bankruptcy court has exclusive jurisdiction, it is nonetheless commonplace for a bankruptcy court to grant relief from the stay imposed by § 362(a) to allow the state court to determine the extent of the interest of the debtor and non-debtor spouse (or former spouse) in marital property or to determine the amount of the nondebtor spouse's property settlement claims or interests. Sommer & McGarity, *Collier Family Law and the Bankruptcy Code* § 5.06(6) at 5–91 (L. King ed. 1995) (hereafter "Collier"). The rationale for doing so, which we employed in this case,[7] was articulated by the Sixth Circuit Court of Appeals in *White v. White (In re White),* 851 F.2d 170 (6th Cir.1988), in recognizing the divorce court's greater expertise on the question of what property belongs to whom. Quoting the Ninth Circuit Court of Appeals in *In re MacDonald,* 755 F.2d 715, 717 (9th Cir.1985), (which in turn was quoting the bankruptcy court in *In re Graham,* 14 B.R. 246, 248 (Bankr.W.D.Ky.1981)), the Court stated that it was persuaded that:

"[i]t is appropriate for bankruptcy courts to avoid invasions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state

---

5. The Debtor's Motion for Special Relief and Susan's Counter–Motion then pending were stayed by the bankruptcy filing.

6. Indeed Susan's domestic relations lawyer advised this Court that Judge Scott would not proceed with the May 8 hearing without further Order of this Court.

7. Because we did not file a memorandum opinion memorializing our rationale for ordering relief from stay to allow the pending domestic relations dispute to proceed in State Court, we will do so now given Movants' request that the relief be withdrawn.

court brethren and their established expertise in such matters.' "

851 F.2d at 173. *Accord In re Wilson,* 85 B.R. 722, 727 (Bankr.E.D.Pa.1988) ("it was never Congressional intent to authorize bankruptcy courts to function as a federal domestic relations court"). In *Wilson,* our colleague Judge Bruce I. Fox granted relief from stay to allow equitable distribution of marital property to be resolved in state court, state law governing the equitable division of marital property and state court being the forum initially chosen by the parties. Judge Fox required, however, as did we in our May 16 Order, that the parties return to the bankruptcy court so that implementation of the state court decree be made in a manner consistent with the rights of the debtor, trustee and all creditors. *Id.* at 727. *See also Robbins v. Robbins (In re Robbins),* 964 F.2d 342, 345 (4th Cir.1992).

### B.

█ The appropriateness of relief from stay is not undermined in this case by the subsequent events which the Movants have established. Debtor is concerned that Susan, who has control of the marital assets, is delaying the resolution of equitable distribution matters and therefore the bankruptcy case as well.[8] In the face of Susan's representation in support of her request for relief from stay that the State Court hearing would expedite resolution of the issues between the parties, Susan's alleged conduct is offered as a ground for vacating the May 16 Order. As we observed at the hearing on the Motion, and as the Debtor conceded, the remedy for Susan's delay, if any,[9] in the State Court, is recourse to state law procedures, such as a motion to compel, to elicit action. We have no reason to believe we are any better able to move the equitable distribution proceedings along than Judge Scott would be if the proper motions were made.

█ The second reason advanced by the Movants for reimposition of the stay is more compelling given our requirement that the

State Court proceedings not prejudice the rights of creditors with an interest in Debtor's share of the marital property. The May 16 Order insofar as it directed the parties to return to this Court for further proceedings, including matters relating to the liquidation of estate property and the allowance and payment of claims, was intended to protect these interests. However, that provision is insufficient if the Trustee, who stands in the shoes of the Debtor with respect to property of the debtor's estate, has no effective participatory rights in the process in which that estate is defined. As we advised the parties at the hearing on the Motion, we do not believe the proper response to the narrow problem identified by the Movants is to substitute ourself for the State Court in the equitable distribution proceeding in order to assure the Trustee's right to participate. Rather we believe the correct approach is to deny the Motion on the assumption that the Trustee will be able to effectively participate in the State Court equitable distribution proceeding according to his interest. This approach is responsive to and supportive of the State Court's efforts to harmonize the competing interests at stake. A further motion under section 105 to reimpose the stay is an adequate safeguard in the event creditors' rights are threatened notwithstanding.

Federal courts have recognized that the Chapter 7 trustee's ability to participate in state court equitable distribution proceedings is important when relief from stay is granted, thereby relaxing the bankruptcy court's exclusive control over estate property. In *White,* the Circuit Court of Appeals "suggested" that:

> the courts below urge the trustee to appear in the divorce action. By setting out his position as representative of the debtor's creditors, the trustee could make the state court aware that other parties' interests will be affected by the property division, thus possibly facilitating a fairer settlement for all parties concerned.

---

**8.** The bankruptcy case was filed on December 22, 1994. Mr. Kaliner was appointed Interim Trustee one week later.

**9.** Susan denies any delay on her part and accuses Debtor of not filing the documents required to move forward with the equitable distribution hearing now scheduled for May 8, 1996.

851 F.2d at 174. *See also In re Polliard,* 152 B.R. 51, 56 (Bankr.W.D.Pa.1993) ("We suggest that the trustee enter an appearance in the divorce proceeding to ensure that the Court of Common Pleas is apprised of the concerns of other creditors."); *In re Donnelly,* 151 B.R. 787, 789–90 (Bankr.S.D.Ohio 1992) ("Trustee should participate in the [state court apportionment of marital property] determination as it relates to property of the estate."); *In re Hohenberg,* 143 B.R. 480, 489–90 (Bankr.W.D.Tenn.1992) (unsecured creditors, including the trustee in a related case, should be allowed to participate in the state court litigation and discovery); *In re Davis,* 133 B.R. 593, 593 (Bankr.E.D.Va. 1991) (rejects trustee's argument in opposition to relief from stay that he would not have standing in the state court to protect the estate's interest in property and suggests that the trustee may intervene on behalf of the debtor's estate). Finally, in our own jurisdiction, Judge Fox, lifting the stay in *Wilson,* stated:

> To the extent the trustee wishes to participate as current "owner" of the property at issue, he is free to raise the standing question with the state court. I cannot assume that state court will ignore the applicability of relevant federal law or the legitimate concerns of the trustee.

85 B.R. at 729.

None of the above authorities stand directly for the proposition that a trustee is entitled to *intervene* in domestic relations litigation. Since a federal court is not in a position to direct a state court to allow intervention, this is not surprising. The Pennsylvania Rules of Civil Procedure allow a (non-party) person to intervene in a state court proceeding if "such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or an officer thereof." Pa. R.Civ.P. 2327. Clearly creditors with an interest in the debtor's share of the marital estate who are represented by the Trustee could be adversely affected by equitable distribution.[10] For example, in those cases where a debtor allows a disproportionate share of the marital property to be distributed to the non-debtor spouse in exchange for a reduction of future (and non-dischargeable) support obligations, creditors of the debtor's estate would be adversely affected.[11] The trustee would be the appropriate party to prevent that injustice. Collier § 2.07(4) at 2–88.

As noted above, the Trustee has moved to intervene and that motion is pending before Judge Scott who has asked Susan to seek this Court's assistance in addressing this issue. Susan, who conceded that the Trustee "should be there" and be heard in order to alert the master and/or the judge of the creditor interests affected, opposes intervention which would give the Trustee full rights of participation, including the right to object to an agreement made between she and the Debtor, to file an exception to the master's report and to appeal. We are somewhat puzzled by the line which Susan seeks to draw. On the one hand, she recognizes that the interests of creditors are impacted by the equitable distribution, and accordingly they have a right to participate by their representative, the Chapter 7 Trustee. Yet the right she would have the court fashion would have

---

10. We dismiss as overstated Susan's concern that by allowing the Trustee intervention, he will be insinuating himself in areas where he has no concern such as alimony and custody. Why he would expend time in this wasteful manner is unclear to me. In any event, we see no reason why the State Court's order could not limit the Trustee's participation to equitable distribution matters. This was the approach adopted by the court in *Hohenberg, supra,* where creditors were permitted to participate in state court divorce proceedings involving litigation and discovery which concern property of the bankruptcy estate. Expressly excepted from that relief were any proceedings relating to the right to divorce, child custody, child visitation, alimony, maintenance and support from property, which are not part of the bankruptcy estate. Obviously in the instant case where marital property has not yet been equitably distributed, what is property of the estate has yet to be defined so that the trustee's participatory role would have to be broader than the creditors' involvement in *Hohenberg.*

11. Susan, while acknowledging the existence of collusive property settlements that favor spousal over creditor interests, rejects the possibility of such a scenario occurring here given her and the Debtor's antagonism. While this may be so, we do not believe a rule should be fashioned based on the current situation between the parties.

no remedy if the Trustee believed creditor interests were being prejudiced. Under her scenario, the Trustee could not object to a settlement reached by the Debtor and Susan and accepted by the master. In her parlance, such an act would "thwart" a two party agreement. Yet that is precisely why the Trustee seeks to participate in the process by which equitable distribution is achieved. If, for example, the parties reached an agreement that allotted a disproportionate amount of the marital assets to Susan to the prejudice of Debtor's estate, the Trustee needs standing to complain of its unfairness. Whether that role can only be assumed by a grant of intervention is a decision we leave to the State Court to whom the Trustee's motion to intervene is addressed. We are confident that Judge Scott will be able to fashion an order that will protect all of the interests that have been identified.

An order consistent with the foregoing Opinion will be entered.

### ORDER

**AND NOW,** this 18th day of April, 1996, upon consideration of the Joint Motion of Michael Kaliner, Trustee and Larry Moses, Debtor, To Vacate Order of May 16, 1995 Granting Partial Relief Lifting Stay,

**AND** after notice and hearing, and for the reasons stated in the accompanying Opinion,

It is hereby **ORDERED** and **DECREED** that the Motion is **DENIED.**