In re Douglas A. COLANGELO, Debtor.

Linda S. Colangelo BROWN, Plaintiff,

v.

Douglas A. COLANGELO, Defendant.

Bankruptcy No. 5–94–01563.
Adversary No. 5–95–0290A.

United States Bankruptcy Court, M.D. Pennsylvania.

July 16, 1996.

John Murphy, Wellsboro, PA, for Debtor/Defendant.

William Hebe, Wellsboro, PA, for Plaintiff.

Charles Szybist, Trustee in Bankruptcy, Williamsport, PA.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

Linda S. Colangelo, now known as Linda S. Colangelo Brown, divorced Douglas A. Colangelo, the Debtor herein, on August 13, 1993. While that may have ended the marriage, the financial controversy over this dissolution was decided by a master in divorce and an interim order approving that report on November 10, 1993. Timely exceptions to that report were filed and the Tioga County Court issued a modified order disposing of the exceptions on September 11, 1995. *Plaintiff's Exhibit No. 15.*

As has become quite common, the blend of the divorce and the bankruptcy has resulted in the fundamental question as to just what items in the court's order allocating property and providing alimony are dischargeable by the bankruptcy and what items are not. Specifically, the Plaintiff requests that all obligations of the Defendant–Debtor to her arising out of the matrimonial proceedings be deemed to be non-dischargeable. Orders were entered in Tioga County Court regarding equitable distribution, alimony, and counsel fees. The Debtor acknowledges and admits that the attorney fees due to Plaintiff's counsel as well as alimony are, indeed, exempt from discharge. Nevertheless, the Debtor disputes vigorously that the equitable distribution award is non-dischargeable.

The Plaintiff maintained at the time of trial that the non-dischargeability of the equitable distribution award could be established under four (4) of the sixteen (16) exceptions to discharge set forth in 11 U.S.C. § 523.

While it could be anticipated that the Plaintiff would have relied on the § 523(a)(5) exception (alimony, maintenance or support) and § 523(a)(15) (other debt incurred in the course of a divorce or separation), the Plaintiff has also maintained that this debt should not be dischargeable by reason of fraud under § 523(a)(4) as well as willful, malicious injury under § 523(a)(6). In support of her argument relative to the latter two exceptions to discharge, the Plaintiff relies on the

fact that after the separation of the parties in 1991, the Defendant–Debtor moved his IRA account from his then-employer to a brokerage account. This turned out to be a horrendous investment decision resulting in the reduction of that fund from approximately Seventy–Two Thousand Dollars ($72,-000.00) to slightly in excess of Seventeen Thousand Dollars ($17,000.00) over the course of less than eighteen (18) months. The Plaintiff maintains that this transfer of the fund, combined with the failure to advise the Plaintiff as to the performance of the asset, was equivalent to a fraud on the Plaintiff and should result in the non-dischargeability of the obligation. The Plaintiff further maintains that this caused a willful and malicious injury to the Plaintiff or to the asset in which the Plaintiff had a vested interest.

We need only address these last two exceptions should the Plaintiff fail to sustain her burden relative to the more common exceptions to discharge, i.e. 11 U.S.C. § 523(a)(5) and 11 U.S.C. § 523(a)(15). We will thus discuss the §§ 523(a)(5) and (a)(15) exceptions first.

The burden of establishing an exception to discharge is on the Plaintiff. *In re Cohn*, 54 F.3d 1108 (3rd Cir.1995). That burden must be met by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Alimony, maintenance and support are non-dischargeable obligations. Property settlements were historically dischargeable. *In re Chedrick*, 98 B.R. 731 (W.D.Pa.1989). Nevertheless, in 1994, prior to the filing of the immediate bankruptcy, Congress amended the Bankruptcy Code to provide for an additional exception to discharge wherein debts incurred by the debtor in the course of a divorce or separation and not otherwise excepted from discharge under the provisions of § 523(a)(5), were also excluded from discharge unless the equities of the situation compelled a different conclusion. Congress thus slammed the door on debtors attempting to discharge property settlements by filing a chapter seven bankruptcy absent unusual circumstances.

Since the debt in question is labeled "equitable distribution", we will begin our analysis by setting forth the language present in 11 U.S.C. § 523(a)(15).

### § 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
>> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>>
>> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

This exception, however, will send us back to § 523(a)(5) to determine in the first instance whether the debt described can be excepted from discharge as alimony, maintenance or support. The relevant portion of 11 U.S.C. § 523(a)(5) reads as follows.

### § 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or

property settlement agreement, but not to the extent that— ...

> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

■ This court must look beyond the label that an indebtedness bears to properly adjudicate whether a given debt represents alimony, maintenance or support, or is an item in the nature of any of those three categories. *In re Gianakas,* 917 F.2d 759, 762 (3rd Cir.1990). If this were a settlement agreement, we would look to the intent of the parties to determine the true nature of the obligation. *Id.* at p. 762. We are not, however, dealing with a settlement agreement, but rather, a court order approving, in substance, a master's report. Thus, we are not looking at the intent of the parties instead, we must examine the intent of the court at the time it issued its order. *In re Doloff,* 1996 WL 31856 (Bankr.M.D.Pa.) and *Buccino v. Buccino,* 397 Pa.Super. 241, 580 A.2d 13 (1990). Since we are dealing with federal standards of alimony, maintenance and support, a state court finding that an award is one of equitable distribution would not necessarily be excluded from the provisions of § 523(a)(5). "[A] debt could be in the 'nature of support' under section 523(a)(5) even though it would not legally qualify as alimony or support under state law." *In re Yeates,* 807 F.2d 874, 878 (10th Cir.1986).

While we have no state court opinion from which to cull the intent of the court in arriving at this determination, we do have the benefit of the master's report *(Plaintiff's Exhibit No. 5)* which was substantially adopted by the state court as well as a record of the proceedings before the master. *Plaintiff's Exhibit No. 3.* We will determine that to be sufficient to make the findings that we must in this dischargeability issue.

In reviewing the master's report, the master specifically alluded to the fact that the husband-Debtor was currently paying Eight Hundred Dollars ($800.00) per month for child support. The master recognized the disparity in incomes and awarded the Plaintiff alimony payments in the amount of Four Hundred Dollars ($400.00) per month for a period of three years. The master then analyzed the financial assets acquired during the course of the marriage and determined that fifty-seven and one-half percent (57½%) of those assets should be awarded to the Plaintiff-wife as equitable distribution. The master recommended an order, which was executed, awarding to the Plaintiff, fifty-seven and one-half percent (57½%) of the net value of the estate of One Hundred Fifty–Two Thousand Six Hundred Sixteen and 31/100 Dollars ($152,616.31) or the computed amount of Eighty–Seven Thousand Seven Hundred Fifty–Four and 38/100 Dollars ($87,754.38). Since various assets had theretofore been transferred to the Plaintiff, the court order of November 10, 1993 provided a final award of Thirty–Nine Thousand Nine Hundred Sixty–Seven Dollars ($39,967.00) in favor of the Plaintiff.

No specific fund was identified from which this sum should be paid. Nevertheless, during the pendency of exceptions to the master's recommended order, the parties, Douglas Colangelo and Linda Colangelo Brown, agreed by stipulation that the sum of Thirty–Eight Thousand One Hundred Seventy–Five and 44/100 Dollars ($38,175.44) would be separated from the current savings and investment and tax deferral plan maintained by Mr. Colangelo and placed into account in Linda Colangelo Brown's name. That stipulation was approved by the court on July 22, 1994.

Subsequently, on November 4, 1994, in an apparent adjudication of the pending petition, the Tioga County Court through Honorable Robert E. Dalton, Jr., President Judge, issued an order requiring Douglas Colangelo to produce the sum of Thirty–Nine Thousand Nine Hundred Sixty–Seven Dollars ($39,-967.00) to the Plaintiff herein, Linda Colangelo Brown.

The bankruptcy followed one month later.

Based on this scenario, we have no reason to believe that the court intended anything different than to award, as equitable distribution, the sum that was labeled "equitable distribution". We further conclude that there is no evidence to suggest that this

award would comport to even federal standards of alimony, maintenance or support. We thus conclude that this debt does not fit within the § 523(a)(5) exception.

■ That would then take us to an examination of whether this debt would be excluded under § 523(a)(15).

Quite obviously, this award for equitable distribution would not be dischargeable unless exceptions to the exceptions are present. Since the Debtor is not engaged in business, the first exception is met if the Debtor does not have the ability to pay the equitable distribution award from his income or his property after deducting those expenses reasonably necessary to be expended for the maintenance or support of himself and his dependents.

While the burden of proving an exception to discharge rests on the creditor claiming that exception, the issue becomes whether the burden of proving an exception to the exception, i.e. whether the debtor has the ability to pay his debt from his income or his property, rests on the creditor or on the debtor raising such defense.

The Advisory Committee Note to Federal Rule of Bankruptcy Procedure 4005, although dealing with § 727 discharge objections, appears to reflect relevant considerations when dealing with § 523 dischargeability issues.

This rule does not address the burden of going forward with the evidence. Subject to the allocation by the rule of the initial burden of producing evidence and the ultimate burden of persuasion, the rule leaves to the courts the formulation of rules governing the shift of the burden of going forward with the evidence in the light of considerations such as the difficulty of proving the nonexistence of a fact and of establishing a fact as to which the evidence is likely to be more accessible to the debtor than to the objector.

■ We conclude that, just as in student loan cases where it is the burden of the debtor to go forward with evidence of undue hardship[1], the Debtor has the burden of

going forward to demonstrate an inability to pay the debt inuring from an equitable distribution award from either income or property. Should the Debtor establish legally sufficient facts to make a prima facie showing of that inability, then the ultimate burden of proving otherwise is on the creditor.

Testimony briefly addressed the Debtor's income and expenses. He incorporated by reference Schedules I and J of his bankruptcy schedules to demonstrate that he had no excess income but was basically living from paycheck to paycheck. None of the expenses appeared to be extraordinary but for alimony, maintenance and support currently being expended for his ex-spouse, the Plaintiff, and their children. The Plaintiff did not contest the accuracy of either income or expenses. The Debtor further added that any extraordinary expenses had to be addressed on an extended repayment schedule.

We conclude that the Debtor cannot pay this equitable distribution award from his income or his anticipated income. We further find that the Debtor could not afford this payment out of his property since the only significant asset that was alluded to at the hearing was the net balance in the savings and investment plan approximating Seventeen Thousand Dollars ($17,000.00) which had previously been paid over to the chapter seven trustee pending distribution to creditors. Of that asset, the Debtor merely exempted the sum of Six Hundred Fifteen and 11/100 Dollars ($615.11) according to Schedule C of his bankruptcy schedules. Furthermore, we can presume that the Debtor's assets would include some or all of the husband's share of marital assets that he was allowed to retain based on the master's report, i.e. the sum of Sixty–Four Thousand Eight Hundred Sixty–One and 93/100 Dollars ($64,861.93). Apparently, Twenty–Six Thousand Eight Hundred Eighteen Dollars ($26,818.00) of that was in a pension fund, currently unavailable to the Debtor for distribution. A good part of the balance of the husband's share of equitable distribution was probably based on the then value of the savings and investment plan of Seventy–Two Thousand Dollars ($72,000.00) which, of

---

**1.** *In re Fox,* 163 B.R. 975 (Bkrtcy.M.D.Pa.1993).

course, has been reduced by Fifty–Five Thousand Dollars ($55,000.00) to Seventeen Thousand Dollars ($17,000.00). While the testimony in this area was sketchy, we find that the Debtor has established that he just does not have the ability to pay a Thirty–Nine Thousand Dollar ($39,000.00) award out of his property.

Since the Debtor has demonstrated a prima facie showing of an inability to pay the equitable distribution award and the creditor-Plaintiff has not rebutted that prima facie showing, we see no need to address the second prong available to the Debtor to except from discharge an equitable distribution award, i.e. 11 U.S.C. § 523(a)(15)(B), that discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to the former spouse. We view that argument as an alternative argument available to the Debtor. *140 Cong.Rec. H10,752, H10,770 (daily ed. October 4, 1994) (section by section description)* cited in *3 Collier on Bankruptcy, 15th Ed., ¶ 523.19E at p. 523–136.*

■ We next address the issue of whether these facts will support the Plaintiff's claim of an exception to dischargeability under 11 U.S.C. § 523(a)(4). That section reads as follows:

§ **523. Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1128(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

There has been no allegation that the Debtor was guilty of an embezzlement or a larceny. The Plaintiff maintains, however, that the Debtor was in a fiduciary capacity with regard to marital property and willfully allowed this property to depreciate.

We initiate our discussion in this area by first setting forth the language of the order regarding equitable distribution.

"AND NOW, this 10th day of November, 1993, upon review of the attached report, it is hereby ORDERED, ADJUDGED and DECREED that Linda S. Colangelo is awarded the sum of $87,754.38. This amount shall be less the $26,818.00 received from proceeds of the sale of the property; $11,050.00 value of the car; $8,419.38 value of the IRA in her name; and $1,500.00 value of the life insurance policy in her name or a net sum of $39,-967.00.

"The parties are ORDERED to gather the items of personal property and present them to the Master for sale at public auction." *Plaintiff's Exhibit No. 5 (second page).*

It is important to note that no specific property was awarded to the Plaintiff, Linda Colangelo. Rather, it was anticipated that the master would liquidate the property "at public auction" if necessary. The Plaintiff's distribution was to be Eighty–Seven Thousand Seven Hundred Fifty–Four and 38/100 Dollars ($87,754.38) less deductions for earlier distributions for the net sum of Thirty–Nine Thousand Nine Hundred Sixty–Seven Dollars ($39,967.00).

■ The Debtor's possession of property after the date of this order does not appear to be subject to any defined fiduciary duty. In fact, the Supreme Court of the United States, in interpreting then existing bankruptcy statutes, makes clear that the fiduciary capacity referred to in exceptions to discharge refer to underlying trusts that are "special" or "technical" in nature, "not those which the law implies from the contract." *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934) and *Chapman v. Forsyth, et al.,* 43 U.S. (2 How.) 202, 208, 11 L.Ed. 236 (1844). "[G]eneral fiduciary obligations are not sufficient to establish a fiduciary relationship under section 523(a)(4) 'because of the absence of an express or technical trust relationship with an identifiable res'." *In re Librandi,* 183 B.R. 379, 384 (M.D.Pa.1995) citing *In re Evans,* 161 B.R. 474 (9th Cir. BAP1993).

We are mindful that during the pendency of the exceptions of the equitable distribution order of November 10, 1993, a stipulation was entered into between the parties on July 22, 1994 separating Thirty–Eight Thousand One Hundred Seventy–Five and 44/100 Dol-

lars ($38,175.44) from the account in question and agreeing that an account in Linda Colangelo's name alone be established. The stipulation, however, made clear in paragraph 10 thereof that it was "without prejudice to the rights of both parties to assert whatever arguments or positions they may wish to assert at the time of any final equitable distribution hearing." Accordingly, we interpret this stipulation as an accommodation to the parties rather than any type of modification of the original order of equitable distribution.

 Moreover, even if the Debtor held this money in a fiduciary capacity, he would not necessarily be implicated in any sort of defalcation. "[D]efalcation is the failure to account for money or property that has been entrusted to one.... [D]efalcation is a broader term than either embezzlement or misappropriation ... [D]efalcation is evaluated by an objective standard and no element of intent or bad faith need be shown." *In re Twitchell*, 72 B.R. 431, 435 (Bkrtcy.D.Utah 1987) rev'd 91 B.R. 961 (D.Utah 1988) rev'd 892 F.2d 86 (10th Cir.1989).

Notwithstanding the loss in value of the asset, there was not any evidence that the Debtor could not identify the location of the asset or that the Debtor ever used that asset for his own purposes. Rather than being unable to account for the loss in value, the Debtor precisely identified the investment vehicle and produced supporting documentation. The Plaintiff cannot prevail under 11 U.S.C. § 523(a)(4).

The last ground upon which the Plaintiff maintains the debt is excepted from discharge is under the provisions of 11 U.S.C. § 523(a)(6). The Plaintiff suggests that the property in question was "willfully and maliciously" damaged by the Debtor.

"An injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result." *In re Conte*, 33 F.3d 303, 305 (3rd Cir.1994).

There is no indication in this record or in the exhibits that the Debtor had in mind the desire to hurt the Plaintiff or the Plaintiff's interest in any asset. Nor can we find that the Debtor's investment in a fund recommended by his broker is the equivalent of a substantial certainty that injury (or a loss to the asset) would result. Perhaps we would find differently if the fund in question was known to the Debtor as a high-risk investment. Nevertheless, it was touted to him by the broker as a secure investment. We find the testimony of the Debtor in this regard to be credible and uncontradicted. On these facts, we cannot find that the Plaintiff has met her burden of establishing an exception under 11 U.S.C. § 523(a)(6).

Having concluded that the Plaintiff has not met her burden on any of the exceptions that she advances, we conclude that the debt in question is dischargeable.

Our Order is attached.

### ORDER

For the reasons indicated in the attached Opinion, judgment is hereby rendered in favor of the Defendant.