**In re Mohamad NOURI, Debtor.**

**Vida Roshan, Plaintiff,**

v.

**Mohamad Nouri, Defendant.**

**Bankruptcy No. 5–02–00205. Adversary No. 5–02–00090A.**

United States Bankruptcy Court, M.D. Pennsylvania.

Aug. 1, 2003.

Steven Hurvitz, Esq., for Plaintiff.

Andrew Katsock, Esq., for Debtor/Defendant.

## OPINION[1]

JOHN J. THOMAS, Chief Judge.

### BACKGROUND

This adversary proceeding requires the Court to determine whether certain obligations imposed by an equitable distribution order ("Order") are dischargeable under section 523(a)(15) of the Bankruptcy Code ("Code"). In order to better understand this situation, it's necessary to begin at its inception.

---

1. Drafted with the assistance of Wendy E. Morris, Law Clerk.

Vida Roshan ("Plaintiff") and Mohamad Nouri ("Debtor") were married in September 1981. Two children were born from this union.[2] Both parties spent a large portion of their marriage living abroad before settling in the United States and eventually the Commonwealth of Pennsylvania. The parties separated in August 1995 and maintained residences separate from their marital residence. The Court of Common Pleas of Centre County, Pennsylvania ("state court") entered a divorce decree on December 22, 1997. Although Debtor has remained single, Plaintiff remarried in 1998. After conducting three hearings on equitable distribution, the state court determined the scope of the parties' marital assets and valued them at $433,993.26. It entered its Order, accompanied by an Opinion on February 9, 2000, concerning the division of marital assets. With regard to those items at issue, the state court: (1) awarded the marital residence to the Plaintiff; (2) awarded the Debtor's pension fund, the TIAA/CREF, valued at $67,358, to the Plaintiff; and (3) ordered Debtor to pay Plaintiff $81,418.84 within 60 days of the Order.

Dissatisfied with the result, both parties filed appeals with the Superior Court of Pennsylvania. On October 31, 2001, the Superior Court affirmed the trial court's equitable distribution Order and remanded the case for entry of a Qualified Domestic Relation Order ("QDRO") concerning Plaintiff's interest in the TIAA account. A QDRO was entered in state court on Friday, January 18, 2002, that directed the plan administrator to recognize Plaintiff as an alternative payee and distribute $67,358.46 "as soon as the date of execution of [the] order by the Plan administrator." After the weekend and a court holi-day on the following Monday, Debtor filed a Chapter 7 petition on January 22, 2002.

Debtor listed the aforementioned obligations on his schedules as unsecured debts. Thereafter, Plaintiff filed a Motion for Declaratory Judgment that the TIAA account and marital residence listed on Debtor's schedules were not property of his estate. Plaintiff also filed a Complaint to Determine Dischargeability Under 523(a)(15) that generically asks this Court to rule that "[Debtor's] obligation to pay for or to turn over money and/or property pursuant to a Court Order will be non-dischargeable pursuant to 11 U.S.C. § 523(a)(15) . . . ."

### DISCUSSION

#### A. DETERMINATION OF DISCHARGEABILITY

 Only actual debts owed by a debtor before his petition date are eligible for discharge. 11 U.S.C. §§ 524, 727. The Code defines a "debt" as a "liability on a claim." 11 U.S.C. § 101(12). In turn, a claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5).

To the dismay of many debtors, certain debts are excepted from discharge. 11 U.S.C. §§ 523, 727. An obligation from an equitable distribution order classified as a debt might be dischargeable in a bankruptcy unless it is prohibited by a provision in the Code. In particular, debts incurred during a divorce proceeding generally are not eligible for discharge. 11 U.S.C. § 523(a)(15). Section 523(a)(15) provides:

---

**2.** The oldest child is 19 years old and attends college full-time. The youngest child is 15 years old and resides with Plaintiff during the school year. He spends the summers with Debtor.

(a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court or record, a determination made in accordance with State or territorial law by a governmental unit unless-

(A) the debtor does not have the ability to pay such debt for income or property of the debtor not reasonably necessary to be expended from the maintenance or support of the debtor or a dependent of the debtor ...; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

11 U.S.C. § 523(a)(15)

■ An obligation imposed by an equitable distribution order does not necessarily create a debtor-creditor relationship between the parties. Whether one exists requires a thorough examination of each individual obligation. It would be premature for this Court to assume at the onset that any of the obligations in question are actually debts. Therefore, this Court will examine each obligation.

1. MARITAL RESIDENCE

■ The first issue concerns the obligation to transfer the marital residence to Plaintiff. The essence of Debtor's argument is based on his belief that Plaintiff

was awarded a fixed value, $37,202.06, and not a property interest in the home. He points to the Order for additional proof of the state court's intent.[3] He contends that it is an unsecured debt eligible for discharge. He attempts to rely on *In re Brugger*, 254 B.R. 321 (Bankr.M.D.Pa. 2000), to help advance his position that "when property is already equitably distributed to the respective parties, the resulting right to payment ordered by the court creates a debt on behalf of the obligor." This Court holds that this obligation is not discharged.

■ While debts may potentially be discharged, property interests are not dischargeable. *See In re Bennett*, 175 B.R. 181, 184 (Bankr.E.D.Pa.1994). The mere filing of a bankruptcy petition does not automatically divest Plaintiff of her property interest. *See In re Roberge*, 188 B.R. 366, 369 (E.D.Va.1995).

■■ The extent and validity of property rights are defined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). For our purposes, the Order defines each party's interest in the assets at issue under Pennsylvania domestic relations law. Each party's respected interest in the awarded assets vested when the Order was entered. *Polliard v. Polliard (In re Polliard)*, 152 B.R. 51, 53 (Bankr.W.D.Pa.1993); *See, also, Livingston v. Unis*, 659 A.2d 606, 611 (Pa.Cmwlth.1995). Despite Debtor's arguments, the issue of property rights cannot be re-litigated in this Court after the state court has entered a final order. *Baldino v. Wilson*, 116 F.3d 87, 90 (3rd Cir.1997) (citing *In re Besing*, 981 F.2d 1488, 1496

---

**3.** Debtor makes reference to item 8 under the caption "Marital Assets to Defendant Vida Roshan." That item provides:

*Marital Assets to Defendant Vida Roshan* *Value*

...

8. Marital Residence $37,202.06
(The value of the residence less the mortgage, to be assumed by Defendant)

(5th Cir.1993))(holding that the Bankruptcy Code was not intended to give litigants a second chance to challenge state court judgment, nor did it intend for the Bankruptcy Court to serve as an appellate court [for state court proceedings]). Because property rights are determined by state law, this Court is required to give full faith and credit to the Order.[4] 28 U.S.C. § 1378.

The Order specifically states in the last paragraph that Debtor "shall execute a deed in favor of Defendant Vida Roshan transferring his interest in the marital residence to her." The Order effectively stripped Debtor of any equitable interest he may have held in the property. As the court postulated in *McGraw*:

> [W]hen a court of competent jurisdiction orders property divided between spouses prepetition, the debtor at best could hold only legal title to that property awarded to the non-debtor spouse. The Debtor would hold no equitable interest, and the property would not become property of the estate.

*In re McGraw*, 176 B.R. 149, 151 (Bankr. S.D.Ohio 1994).

█ This would appear to be the case in the parties' situation. Despite Debtor's attempts, he cannot use this Court to gain greater property rights than what he held as of his petition date. *In re Gendreau*, 122 F.3d 815, 819 (9th Cir.1997).

Moreover, Debtor's reliance on *Brugger* is misplaced. The key difference is that *Brugger* dealt with the dischargeability of an *actual* debt of the debtor. 254 B.R. 321, 324 (Bankr.M.D.Pa.2000). In *Brugger*, the equitable distribution order required debtor to buy-out his wife's 50% interest in their jointly formed corporation.

*Id.* at 321. In exchange, debtor's former spouse was required to relinquish her control over the corporation. *Id.* This provision created a debtor-creditor relationship between the parties. *Id.* at 323.

Although this Court stated in *Brugger* that a debt or claim *can* arise once property distribution is ordered, that holding is not applicable to the situation presently before the Court. *See id.* at 324. It is important to note that the *Brugger* holding does not stand for the proposition that a debt or claim is unequivocally created once marital property has been distributed under a divorce decree. Merely that it is possible. Bankruptcy courts must conduct individual inquiries into each situation to determine whether an obligation is an actual debt of a debtor. Unlike *Brugger*, the Order here created an obligation to transfer property, not an obligation to pay. As such, the Order did not create a debt as defined under the Code. Therefore, this obligation is not discharged.

**2. TIAA ACCOUNT**

█ Debtor next argues that Plaintiff's claim for $67,356.46 from his TIAA account is also an unsecured, dischargeable debt and that Plaintiff does not have a property interest in the account. Debtor again relies on this Court's decision in *In re Brugger* to support his argument that the Order created a debt. He points to the Order to support his claim that an award of a fixed dollar amount in a pension plan is a debt, whereas an award for a specified percentage is a property interest. As expected, Plaintiff argues in the alternative that the account is not an asset of Debtor's estate nor a claim that can be discharged in a bankruptcy proceeding. For the following reasons, this Court holds

---

**4.** Attack by the parties on the validity of the judgment has concluded and the equitable distribution order was affirmed by the Superior Court. Furthermore, neither party has any additional appeals pending in the state court system concerning this order.

that Plaintiff's holds a vested property interest in the TIAA account that is not dischargeable.

■ Pension funds in an ERISA qualified plan occupy a unique position vis-a-vis applicable law. Funds accrued during marriage constitute marital property as to both spouses (*Hayward v. Hayward,* 808 A.2d 232, 237, 2002 Pa.Super 305 (2002)), notwithstanding the conclusion that it is not subject to administration by the bankruptcy estate (*Orr v. Yuhas (In re Yuhas),* 104 F.3d 612, 614 (3rd Cir.1997), *cert. denied, Orr v. Yuhas,* 521 U.S. 1105, 117 S.Ct. 2481, 138 L.Ed.2d 990 (1997)).

■ As stated previously, only personal liabilities of a debtor are eligible for discharge. 11 U.S.C. § 524. It stands to reason that only claims against a debtor for payment have the potential of being discharged during a bankruptcy. As such, it is important to note that this obligation is not one of Debtor's debts. What leads to this conclusion is the QDRO entered in state court prior to Debtor's petition date. Close inspection of the QDRO reveals that Plaintiff's claim for payment is against the plan—not the Debtor. Paragraph (1)(a) of the QDRO specifically states that it "shall apply to the Pennsylvania State University Tax Sheltered Annuity Program Maintained with TIAA–CREF. . . ." The Order does not contain language that imposes personal liability on Debtor if the plan administrator fails to comply with the QDRO. The court effectively circumvented any possible issues of Debtor's liability on the obligation by entering the QDRO. If anything, the QDRO created a debtor-creditor relationship between the Plaintiff and the plan.

The parties' situation is similar to the facts in *Gendreau.* In *Gendreau,* plaintiff was awarded a 50% interest in debtor's pension plan. 122 F.3d at 817. The state court in Virginia entered a QDRO which

the plan administrator refused to honor due to technical problems with the order. *Id.* Debtor filed a Chapter 7 bankruptcy before plaintiff could correct the order. *Id.* The Ninth Circuit pointed out that the state court directed the pension plan administrator-not debtor-to pay Plaintiff her portion from the plan. *Id.* at 818. As such, it was not a personal liability of debtor that could be discharged. *Id.* Moreover, the court also held that because plaintiff's interest in the plan was established under state law pre-bankruptcy, debtor's bankruptcy filing did not alter her property rights in the plan. *Id.* at 818–19.

As in *Gendreau,* Plaintiff's interest in the TIAA account vested prior to bankruptcy. Plaintiff's interest in the pension plan became her separate property right and not a debt obligation. *In re Cullen,* 2001 WL 883692, *6 (N.D.Ill. Aug. 6, 2001). Debtor cannot use this Court as a means of divesting Plaintiff of her property rights in an attempt to increase his own.

This Court cannot discharge Plaintiff's claim against the TIAA account.

Although the Supreme Court's holding in *Patterson* allows Debtor to exclude his pension plan which contains an anti-alienation clause from his bankruptcy estate, his interest in the plan is still limited under state law by the QDRO. *Patterson v. Shumate,* 504 U.S. 753, 765, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *See In re Gendreau,* 191 B.R. 798, 802 (9th Cir. BAP 1995) *aff'd,* 122 F.3d 815 (9th Cir.1997)("[D]ebtor's interest in the United pension plan was limited under the state court order. . . .")

In addition, the Court is not persuaded by Debtor's argument that an award for a percentage interest in a pension plan creates a property interest whereas a fixed dollar amount award in a pension plan indicates a personal debt. The Court has

not found any legal authority which makes a distinction between a spouse's award in a pension plan based on a fixed dollar amount compared to a specified percentage.[5] Accordingly, this Court holds that Plaintiff was awarded a property interest in the TIAA account which is not discharged.

### 3. LUMP SUM PAYMENT

The final issue deals with Debtor's obligation to pay Plaintiff a lump sum of $81,418.84. The state court reasoned that the payment would help effectuate a 50/50 split of the marital assets. Plaintiff seeks a determination that this obligation is excepted from discharge under section 523(a)(15). Debtor, however, argues that this obligation is eligible for discharge under either section 523(a)(15)(A) or (B).

 It is evident to the Court from the language in the Order that this obligation falls within the Code's definition of a debt. Because Plaintiff bases her Complaint on section 523(a)(15), the Court will start its inquiry there.

 Plaintiff initially bears the burden of proving by a preponderance of the evidence that this debt should be excepted from discharge. *Grogan v. Garner*, 498 U.S. 279, 290, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Plaintiff must first establish that the debt was actually incurred in the course of a divorce proceeding. Once established, the burden of demonstrating "an exception within an exception" to dischargeability under either subsection 523(a)(15)(A) or (B) shifts to Debtor. *In re Koons*, 206 B.R. 768, 773 (Bankr.E.D.Pa.1997)(citing *In re Stone*,

199 B.R. 753 (Bankr.N.D.Ala.1996)). A sufficient showing under either exception shifts the burden back to Plaintiff to prove otherwise. *In re Colangelo*, 206 B.R. 78, 84 (Bankr.M.D.Pa.1996).

Plaintiff's last hurdle concerns whether the debt was incurred by the Debtor in the course of a divorce proceeding. This Court has no trouble concluding that this debt did not exist prior to the parties' divorce. Instead, it was a created under the Order. As such, it was incurred by Debtor in the course of his divorce. There is no evidence that suggests otherwise. Therefore, Plaintiff has satisfied her burden and the burden of going forward now shifts to Debtor to prove "an exception to an exception" under either section 523(a)(15)(A) or (B).

 Section 523(a)(15)(A), or the "ability to pay" test, forces the court to "engage in the unenviable task of scrutinizing [Debtor's] schedule of income and expenditures." *In re Johnson*, 241 B.R. 394, 398 (Bankr.E.D.Tex.1999). Whereas section 523(a)(15)(B), or the "totality of the circumstances" test, requires the court to use its "pure equitable powers" to subjectively value the parties' situation. *In re Phillips*, 187 B.R. 363, 369 (Bankr. M.D.Fla.1995). Section 523(a)(15) focuses on the parties' current financial circumstances and not their previous economic abilities. *See In re Dressler*, 194 B.R. 290, 300–301 (Bankr.D.R.I.1996). Both tests should be viewed in relation to the current financial positions of the parties and not when the equitable distribution order was entered. Using a date prior to the trial date can potentially exclude evidence

---

**5.** *See e.g. In re McCafferty,* 96 F.3d 192 (6th Cir.1996)(holding that spouses' right to either half of debtor's pension plan or $100,250.21 is a property interest and not a claim); *Brown v. Pitzer,* 249 B.R. 303 (S.D. Ind.2000) (holding that ex-wife's $55,770.33 interest in debt-

or's pension plan is a property interest); *In re Long,* 148 B.R. 904 (Bankr.W.D.Mo. 1992)(court held that Spouse's 40% interest in debtor's pension plan was a property interest and not a claim against the estate).

showing either an improvement or deterioration of the parties' financial situations.

■ Several courts have held that it is not necessary to consider whether a discharge is warranted based on the "totality of the circumstances" once a debtor has proven his case under the "ability to pay" test. *See e.g. In re Koons*, 206 B.R. at 774 (Bankr.E.D.Pa.1997); *In re Willey*, 198 B.R. 1007, 1015 (Bankr.S.D.Fla.1996); *In re Huddelston*, 194 B.R. 681, 689 (Bankr. N.D.Ga.1996); *In re Owens*, 191 B.R. 669, 674 (Bankr.E.D.Ky.1996); *In re Gantz*, 192 B.R. 932, 936 (Bankr.N.D.Ill.1996); *In re Silvers*, 187 B.R. 648, 650 (Bankr. W.D.Mo.1995). This Court views the "totality of the circumstances" test as an alternative Debtor can use if he fails to satisfy the requirements under the "ability to pay" test. *Colangelo*, 206 B.R. at 84.

■ Based on the evidence presented and the testimony of both parties, it is evident that Debtor has met his burden under the "ability to pay" test and this obligation is discharged. Whether Debtor possesses the resources necessary to pay the debt, is a question of fact. *In re Bolger*, 1998 WL 351032, *4 (Bankr. N.D.Ill.1998). Similar to the "disposable income" analysis performed when confirming Chapter 13 cases, the "ability to pay" test requires a finding that Debtor's expenses are "reasonably necessary for his maintenance or support." [6]

Bankruptcy courts do not rely on an universal standard when determining what expenses are reasonably necessary. *In re Nicola*, 244 B.R. 795, 797 (Bankr.N.D.Ill. 2000). Bankruptcy courts are split over what standard to use. Some courts think expenses should be limited to only those necessary for basic needs. *See e.g. In re Jones*, 55 B.R. 462, 466 (Bankr.D.Minn. 1985); *In re Hill*, 184 B.R. 750, 755 (Bankr.N.D.Ill.1995). However, many courts are hesitant to supplant the debtor's expenditures, absent the elimination of expenses for over indulgences and luxury items. *See e.g. In re Hansen*, 244 B.R. 799, 801 (Bankr.N.D.Ill.2000); *In re Zaleta*, 211 B.R. 178, 181 (Bankr.M.D.Pa.1997); *In re Willey*, 198 B.R. 1007, 1014 (Bankr. S.D.Fla.1996); *In re Navarro*, 83 B.R. 348, 355 (Bankr.E.D.Pa.1988). This Court is inclined to follow its position in *Zaleta* and measure the reasonableness of expenses against each of Debtor's surrounding circumstances.

Debtor personally testified concerning his income and expenses listed on Schedules I & J. Although Plaintiff's cross-examination revealed that some of Debtor's expenses have decreased, this Court does not view any change in his disposable income as sufficiently significant to negatively impact the debtor. It does not appear from the evidence that Debtor has any overindulgent expenditures to the detriment of his unsecured creditors. The Debtor simply cannot afford to pay this domestic obligation. This debt is discharged.

■ Alternatively, the Court will also apply the "totality of the circum-

---

6. Section 1325(b) provides, in pertinent part: (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

. . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period begin-

ning on the date that the first payment is due under the plan will be applied to make payments under the plan

(2) for purposes of this section disposable income means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor . . .

stances" test to the parties' situation. The "totality of the circumstances" test forces the Court to tackle the dubious task of subjectively valuing the impact a discharge would have on the parties' individual financial situations. Although the Code is silent on whether Plaintiff's spouse's income should also be considered in our analysis, this Court concludes that its inclusion is necessary. Under state law, Plaintiff's current spouse owes her the duty of support which ultimately results in the twining of their finances. It would appear that the Court cannot properly measure the impact that discharging this debt would have on Plaintiff unless her total household income is also considered. Taking that into consideration, this Court holds that this debt is also discharged under section 523(a)(15)(B).

The benefit of discharging this debt far outweighs any detrimental effects Plaintiff may experience. Discharging this debt will help Debtor achieve a financial fresh start and start anew on level ground. In addition, the disparity between the parties' financial situations is so great that it is hard to envision any detrimental effect Plaintiff might experience if this debt is discharged. It is clear from the evidence that Plaintiff is hardly in a financial bind. Despite the fact that the parties each possess doctorate degrees, their incomes are drastically different. Plaintiff's gross income is well over $120,000.00 per year and has steadily increased every year for the past 3 years. Debtor's yearly salary is approximately half of Plaintiff's. Debtor also gives Plaintiff $500 each month in child support for their youngest child. Plaintiff's household income is further supplemented by her husband's which is higher than her own.[7] Furthermore, Plaintiff

admitted that her husband makes the monthly mortgage payment on their home. The Order reveals that the only marital debt of the parties was the mortgage on the marital residence. Although she has yet to assume the mortgage payments on her former marital residence, Plaintiff testified that the monthly payment was approximately $130.00 per month. Aside from basic necessities and personal indulgences, it appears that Plaintiff's only major monthly expense is her daughter's college tuition that she estimates at $1,400.00 per month. Plaintiff did not provide any evidence to indicate that she is experiencing financial straits. For these reasons, this Court concludes that the debt is discharged under section 523(a)(15)(B).

An Order will follow.

### ORDER

For those reasons indicated in the Opinion filed this date, **IT IS HEREBY**

**ORDERED** that judgment is entered in favor of the Plaintiff, Vida Roshan, and against the Defendant, Mohamad Nouri, with respect to the Marital Residence and the TIAA/CREF account.

It is also **ORDERED** that judgment is entered in favor of Defendant and against Plaintiff under 11 U.S.C. § 523(a)(15) with respect to the lump sum of $81,418.84.

---

**7.** Plaintiff provided testimony concerning her husband's rental properties. The inclusion of any derived rental income will not increase Plaintiff's disposable household income because it is presumably nullified by the property's mortgage(s).