In re Janet M. DENILLO, Debtor.

Janet M. Denillo, Movant

v.

Iron and Glass Bank, Respondent.

No. 02–32274 BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 13, 2004.

Mary Bower Sheats, Esq., Pittsburgh, PA, for Movant.

Reed J. Davis, Esq., Pittsburgh, PA, for Respondent.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor Janet M. Denillo has brought a motion pursuant to § 522(f)(1)(A) of the Bankruptcy Code to avoid a judicial lien of Iron and Glass Bank in the amount of $81,788.68 which attached to real property in which debtor has taken an exemption. The property in question serves as debtor's personal residence. Debtor asserts that the judicial lien impairs that exemption.

Iron and Glass Bank objects to the motion. Debtor, Iron and Glass Bank maintains, did not have an interest in the prop-

erty before the lien affixed to the property. For that reason, it argues, § 522(f)(1)(A) consequently is not available to her.

We conclude that debtor may avoid the lien, but not entirely. She may avoid it to the extent of $70,172.34. The remaining $11,616.34 of the lien is not avoidable.

## – FACTS –

The parties have stipulated to the material facts of this matter.

Debtor and Guy Denillo married in July of 1971 and had four children as a result of their marriage.

On June 23, 1998, debtor commenced a divorce proceeding against Guy Denillo in the Court of Common Pleas of Allegheny County, Pennsylvania. She requested, among other things, equitable distribution of marital property. Included among the marital assets was the former family residence, which they owned during their marriage as tenants by the entirety.

On September 24, 1999, debtor and Guy Denillo entered into a marriage and property settlement agreement, wherein they resolved all outstanding issues concerning equitable distribution. They agreed, among other things, that debtor would have exclusive right to occupy the former family residence until their youngest son graduated from high school or debtor remarried, whichever occurred first. Guy Denillo would at that time transfer his interest in the property to debtor. For her part, debtor agreed to assume the mortgage and to indemnify and hold Guy Denillo harmless with respect to the mortgage obligation.

A divorce decree incorporating the terms and provisions of the marriage and property settlement agreement issued on December 18, 1999.

Iron and Glass Bank confessed judgment against Guy Denillo (but not against debtor) in the amount of $81,788.68 April 9, 2001. The judgment was duly recorded at that time.

The former family residence has an appraised value of $165,000.00 and is subject to a first mortgage in the amount of $106,426.15 in favor of Washington Mutual Bank. It also is subject to a second mortgage in the amount of $29,532.51 in favor of Mortgage Lenders Network U S A.

Pursuant to the marriage and property settlement agreement, Guy Denillo transferred his interest in the former family residence to debtor on May 17, 2001, approximately five weeks after Iron and Glass Bank had confessed judgment against him.

In November of 2001. approximately six months after the conveyance, Guy Denillo filed a voluntary chapter 11 petition. His case subsequently was converted to a chapter 7 proceeding, and he received a discharge in November of 2003.

Debtor in this case, Janet Denillo, filed a voluntary chapter 7 petition of her own on November 7, 2002. Iron and Glass Bank was not listed on the schedules as having a judgment lien against the former family residence of which she then was the sole owner. Debtor apparently was unaware of Iron and Glass Bank's lien when she filed the petition.

Among the assets identified on debtor's bankruptcy schedules was the former family residence of which by then she was the sole owner of record. Debtor took an exemption in the property in the amount of $10,275.00 in accordance with § 522(d)(1) of the Bankruptcy Code. No party in interest objected to the exemption.

Debtor was granted a discharge and a final decree was entered on May 9, 2003. The case was closed that same day.

Approximately four months later, on September 11, 2003, debtor brought a motion to reopen her case so she might avoid the lien of Iron and Glass Bank on the theory that it impaired the exemption she had taken in the former family residence. In support of the motion to reopen, debtor averred that she became aware of the lien only after she had received a discharge and her case was closed.

The motion to reopen was granted over the objection of Iron and Glass Bank on October 14, 2003. The order directed debtor to file a motion to avoid the lien of Iron and Glass Bank within ten days of the order, which debtor did on October 21, 2003.

An evidentiary hearing on debtor's motion to avoid the lien of Iron and Glass Bank and the objection thereto of Iron and Glass Bank was held on March 24, 2004. Both sides agreed at the hearing to have the motion decided on a case-stated basis and to submit written briefs within twenty days thereafter. The parties did so and the matter is now ready for disposition.

## – DISCUSSION –

### – I –

■ The judgment Iron and Glass Bank confessed against Guy Denillo in April of 2001 had all the characteristics and effects of a judgment on a verdict. *See O'Hara v. Manley,* 140 Pa.Super. 39, 44, 12 A.2d 820, 822 (1940).

■ As such, it operated as a lien against any interest Guy Denillo had in the former family residence at that time. A judgment of a court of common pleas for the payment of money operates as a lien upon real property when entered of record in the office of the clerk of that court. 42

Pa.C.S.A. § 4303(a). The lien binds the judgment debtor's real property, whether the judgment debtor holds the property equitably or legally. *Clairton Corp. v. Chicago Title Insurance Company,* 438 Pa.Super. 488, 494, 652 A.2d 916, 919 (1995).

Moreover, to the extent there was a lien against the former family residence, it was "portable" and remained attached to the property [1] even after Guy Denillo transferred his interest in it to debtor. The lien prevented him from conveying his interest in the property in such a way as to divest it. *Id.*

Debtor in this instance seeks to avoid the lien of Iron and Glass Bank in accordance with § 522(f)(1)(A), which provides in part as follows:

> . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . ., if such lien is —
>
> (A) a judicial lien . . . .

11 U.S.C. § 522(f)(1)(A).

The lien at issue here, which arose as a result of a confessed judgment, qualifies as a judicial lien for purposes of § 522(f)(1)(A) and consequently is a candidate for avoidance pursuant to the provision. *Graffen v. City of Philadelphia,* 984 F.2d 91, 96 n. 7 (3d Cir.1992)(citing *Gardner v. Pennsylvania,* 685 F.2d 106, 108 (3d Cir.), *cert. denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982)).

■ Before determining whether debtor may avoid Iron and Glass Bank's lien pursuant to this provision, we must resolve an important threshold issue. If debtor is to prevail, she must have had an interest in the property *before* the lien affixed to the

---

1. As we shall see, debtor concedes this point. Her motion presupposes that the lien at-
tached to the property after Guy Denillo conveyed his interest in the property to her.

property. *Farrey v. Sanderfoot,* 500 U.S. 291, 296, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991). She cannot prevail, however, if the lien of Iron and Glass Bank affixed *before* debtor acquired that property interest.

Iron and Glass Bank's sole objection to debtor's motion is that the requirement articulated in *Farrey* is not satisfied and that § 522(f)(1)(A) therefore does not provide a vehicle for debtor to avoid its judicial lien. According to Iron and Glass Bank, debtor acquired her interest in the property to which its lien affixed after, not before, its lien attached thereto.

The tenancy by the entireties by which debtor and Guy Denillo held the property during their marriage was, in the words of Iron and Glass Bank, "severed" upon issuance of the *divorce decree* on December 18, 1999. At that time, debtor and Guy Denillo came to have separate and equal one-half interests in the property.

Its lien, Iron and Glass Bank continues, attached in April of 2001 to Guy Denillo's separate one-half interest in the property. The lien did not attach at that time, however, to debtor's separate interest in the property. Because its lien attached only to Guy Denillo's one-half interest in the property when it did, Iron and Glass Bank would have us conclude that its lien attached to that particular interest in the property some five weeks before Guy Denillo transferred that interest in the property to debtor.

This conclusion is unwarranted in light of the facts of this case. Debtor, we conclude, had an interest in the property Guy Denillo transferred to her before Iron and Glass Bank's lien attached. The require-

ment of *Farrey,* in other words, is satisfied in this instance.

■ As was parenthetically noted previously in a footnote, debtor does concede that the lien which attached to Guy Denillo's interest in the former family residence remained attached even after he transferred his interest to her in May of 2001. The lien, in other words, was not divested by the transfer. Were this not the case, debtor would not think it necessary to avoid the lien on the theory that it impairs the exemption she has taken in the former family residence.[2]

Debtor and Guy Denillo, it was noted, held the family residence as tenants by the entirety during their marriage.

■ A tenancy by the entirety essentially is a species of joint tenancy which is modified by the common-law fiction that husband and wife are one person. *See Frederick v. Southwick,* 165 Pa.Super. 78, 83, 67 A.2d 802, 805 (1949). It is a form of co-ownership by husband and wife in real and personal property with right of survivorship. Each spouse is seised *per tout et non my*—i.e., of the whole or entirety, not of a share, moiety, or divisible part. *In re Estate of Bullotta,* 798 A.2d 771, 774 (Pa.Super.2002), *aff'd,* 575 Pa. 587, 838 A.2d 594 (2003). Such a tenancy is peculiar to married couples. *First Federal Savings & Loan Association of Greene County v. Porter,* 408 Pa. 236, 242, 183 A.2d 318, 322 (1962).

With the exception of vested rights, a divorce decree "which absolutely terminates the bonds of matrimony" also terminates all property rights which depend on the marital relationship, unless the divorce decree provides otherwise. 23 Pa.C.S.A. § 3503 (Purdon's 2001).

---

2. Debtor's claimed exemption is allowed by operation of law because no timely objection was raised thereto. *See Taylor v. Freeland &* *Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

■ Married persons who are divorced thereafter generally hold the property as tenants in common of equal one-half shares in value, unless the court issuing the divorce decree provides otherwise in an order. 23 Pa.C.S.A. § 3507(a) (Purdon's 2001). A tenancy by the entirety is "severed" upon entry of the divorce decree. *Keystone Savings Association v. Kitsock,* 429 Pa.Super. 561, 568, 633 A.2d 165, 168 (1993). A tenancy in common is an estate in which there is unity of possession but separate and distinct titles. *In re Sale of Property of Dalessio,* 657 A.2d 1386, 1387 n. 1 (Pa.Cmwlth.1995).

Although it was not articulated perhaps as clearly as it could have been, Iron and Glass Bank's objection to debtor's motion relies on the premise that, once the divorce decree issued, debtor and Guy Denillo became tenants in common, with each of them having a separate and distinct one-half interest in the former family residence. This premise normally would be true in most instances, but is not true here in light of the specific facts presented.

The divorce decree issued on December 18, 1999, incorporated the provisions of the marriage and settlement agreement. Among other things, it provided that Guy Denillo would convey "his interest" in the former family residence to debtor when debtor remarried or their youngest child graduated from high school, whichever event occurred earlier.

What must be determined at this point is whether the general rule articulated at 23 Pa.C.S.A. § 3507(a) applies here. The respective interests of debtor and Guy Denillo in the former marital residence must, in other words, be ascertained *as of the time when the divorce decree issued.* We conclude for reasons set forth below that Guy Denillo had at best only a legal interest in a one-half interest in the former family while debtor had at least an equita-ble interest at that time in his share of the property in addition to having her own one-half interest in the property.

■ When a divorce decree directs one spouse to transfer, at some future time, his or her interest in the former marital resi-dence to the other spouse, the transferor spouse is stripped of any equitable interest he or she may have in the property and has at best only legal title thereto. *In re Nouri,* 304 B.R. 155, 161 (Bankr.M.D.Pa. 2003). If the equitable interest in the property does not reside in the transferor spouse, it resides of necessity in the spouse to whom legal title is to be transferred in the future.

The operative time when the equitable interest in the other spouse's one-half interest in the former family residence comes to reside in the other spouse is when the divorce decree ordering such a transfer issues, not when legal title is in fact transferred. The divorce decree in this case issued on December 18, 1999, some sixteen months *before* Iron and Glass Bank's lien attached in April of 2001 to whatever interest Guy Denillo had in the former family residence as of December 18, 1999.

Support for the proposition that the pertinent time for determining when the "new" interest of former spouses arises in former marital property is when a divorce decree issues, not when the court-ordered conveyance takes place, is found in *Keystone Savings Association v. Kitsock,* 429 Pa.Super. 561, 633 A.2d 165 (1993).

In *Kitsock,* husband and wife purchased their marital residence as tenants by the entirety in July, of 1976. The wife commenced a divorce proceeding and requested equitable distribution of marital property in December of 1985. In March of 1988, while the divorce proceeding was pending, Keystone Savings Association

loaned $60,000 to the husband. The divorce proceeding was bifurcated and a divorce decree was entered in December of 1988. Equitable distribution did not, however, take place at that time.

Keystone commenced an action against the husband in April of 1989 in connection with the loan. The wife was not a party to the action. When the husband did not answer the complaint, a default judgment was entered against him and in favor of Keystone in March of 1990. Because she was not a party to the action, judgment was not also entered against the wife. Approximately two months later, on May 24, 1990, an order issued in the divorce proceeding awarding the marital residence to the wife and directing the husband to execute a deed transferring the property solely to the wife.

A week later, on June 1, 1990, Keystone filed a praecipe for a writ of execution against the husband's "undivided one-half interest" in the marital residence. Notice of a sheriff's sale of said interest was given shortly thereafter.

Two months later, on August 1, 1990, the divorce court authorized the prothonotary to execute a deed on behalf of the husband conveying to the wife the husband's interest in the former marital residence. Upon motion by the wife, the trial court set aside the sheriff's sale and permanently stayed all further attempts by Keystone to execute on the marital residence. 429 Pa.Super. at 563–64, 633 A.2d at 166. Keystone appealed the order of the divorce court to the Superior Court, which subsequently affirmed the order of the lower court.

According to Keystone, by operation of law the marital residence was held by the parties to the divorce as tenants in common of equal one-half interest after the divorce decree issued in December of 1988. As a consequence, Keystone argued, it had a right to execute on the husband's one-half interest in the marital residence. 429 Pa.Super. at 566, 633 A.2d at 168.

■ Keystone's argument was summarily rejected by the Superior Court. Keystone did not obtain a praecipe for a writ execution against the property until June 1, 1990, a week after the divorce court had awarded the marital residence to the wife. As a consequence, the Superior Court concluded, the husband no longer had an interest in the marital residence on June 1, 1990, even though the court-ordered conveyance had not yet taken place.[3] 429 Pa.Super. at 566, 633 A.2d at 168.

**3.** The Superior Court also held in *Kitsock* that the marital residence was *in custodia legis*—i.e., "under the wardship of the court—while the equitable distribution request was pending." As a consequence, it concluded, the property was not subject to any judicial lien. 429 Pa.Super. at 567–68, 633 A.2d at 168. The rule set forth as 23 Pa.C.S.A. § 3507(a), in other words, was not dispositive. Although § 3507(a) generally operates to sever a tenancy by the entirety upon entry of a divorce decree in a bifurcated action, it does not serve to alter the "marital" character of the property. 429 Pa.Super. at 567, 633 A.2d at 168. In *Mid–State Bank & Trust Co. v. Globalnet International, Inc.*, 557 Pa. 555, 735 A.2d 79 (1999), the Supreme Court of Pennsylvania distinguished that case from *Kitsock* and dodged the question whether the doctrine of *in custodia legis* applies to divorce and equitable distribution proceedings and ultimately concluded that, even if the doctrine does apply, the property at issue there was not *in custodia legis* when a creditor recorded a mortgage against one of the parties in a divorce proceeding.

The doctrine of *in custodia legis* is not relevant to the present case and plays no role in it. Our interest in *Kitsock* is confined to the above analysis which concluded that the husband had no interest in the marital residence when a writ of execution issued even though the husband's interest in the property had not yet been conveyed to the wife.

■ The significance for our purposes of the analysis of the Superior Court is that the relevant time for determining when a party to a divorce action obtains their post-divorce interest in marital property is when the equitable distribution order is entered, not when a formal conveyance of that interest occurs. If the husband in *Kitsock* had no interest in the marital property when the writ of execution issued, it should follow *pari passu* that Guy Denillo also had no interest in the former marital residence when Iron and Glass Bank confessed judgment against him on April 9, 2001, some sixteen months after the court in the divorce proceeding in our case awarded the former family residence to debtor.

If Guy Denillo no longer had an interest in the property by April 9, 2001, the date of the confessed judgment, debtor had it. Debtor had at least an equitable interest in the property prior to April 9, 2001, even though Guy Denillo had not yet transferred his interest to her.[4]

We conclude in light of the foregoing that the requirement set forth in *Farrey* is satisfied in this instance and that § 522(f)(1)(A) is available to debtor for avoiding the judicial lien of Iron and Glass Bank.

## – II –

■ Having so concluded, it remains to be determined whether debtor may avoid the judicial lien of Iron and Glass Bank in accordance with § 522(f)(1)(A) and, if so, to what extent it impairs her exemption in the former family residence.

The formula for determining whether a judicial lien impairs an exemption a debtor has taken is set forth at § 522(f)(2)(A). A judicial lien impairs an exemption for purposes of § 522(f)(1)(A):

... to the extent that the sum of —

(I) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest would have in the absence of any liens. 11 U.S.C. § 522(f)(2)(A).

■ Debtor has the burden of proving, by a preponderance of the evidence, that she is entitled to avoid the judicial lien of Iron and Glass Bank. *Conner v. Wrobel (In re Conner)*, 300 B.R. 644, 648 (Bankr. W.D.Pa.2003).

The values required to determine whether debtor may avoid the judicial lien of Iron and Glass Bank are not in dispute. The parties have stipulated as to the relevant values.

The amount of the judicial lien of Iron and Glass Bank is $81,788.68.

The total amount of all other liens against the property is $135,958.66. Washington Mutual Bank has a first priority mortgage against the former family residence in the amount of $106,426.15. Mortgage Lenders Network U.S.A. has a second priority mortgage in the amount of

---

4. The analysis set forth in *Kitsock* might support the conclusion that Guy Denillo had no interest whatsoever in the former family residence, not even a legal interest, when Iron and Glass Bank confessed judgment against him on April 9, 2001, and that Iron and Glass Bank's judgment lien therefore did not attach at all to the former family residence. We need not dwell on this possibility because it is not the position debtor has taken in her motion. As was noted previously, debtor concedes that Iron and Glass Bank's lien attached to the interest in property conveyed to her by Guy Denillo and seeks instead to avoid it by means of § 522(f)(1)(A).

$29,532.51. ($106,426.15 + $29,532.51 = $135,958.66)

The amount of the exemption debtor could have taken in the former family residence if there had been no lien against it is $17,425.00. 11 U.S.C. § 522(d)(1).

The value of the former family residence as of the filing of the bankruptcy petition was $165,000.00.

The sum of: (I) the lien of Iron and Glass Bank ($81,788.68); (ii) all other liens against the property ($135,958.66); and (iii) the exemption debtor could have taken in the property pursuant to 11 U.S.C. § 522(d)(1) in the absence of any liens against the property ($17,425.00) is $235,172.34. ($81,788.68 + $135,958.66 + $17,425.00 = $235,172.34.)

The sum of Iron and Glass Bank's judicial lien, all other liens against the property and the exemption debtor could have taken in the property in the absence of any liens ($235,172.34) exceeds the value of the property in question by $70,172.34 ($235,-172.34—$165,000.00 = $70,172.34). Iron and Glass Bank's judicial lien consequently impairs debtor's exemption for purposes of § 522(f)(1)(A) in this amount. If the judicial lien of Iron and Glass Bank did not exist, debtor's exemption in the former family residence would not be impaired. The value of debtor's interest in the property ($165,000.00) would exceed the sum of the mortgage liens($135,958.66) by $29,041.34 ($165,000.00—$ 135,958.66 = $29,041.34).

This determination does not bring an end to our analysis. The final issue we must resolve is whether debtor may avoid the judicial lien of Iron and Glass Bank in its entirety or only in part. The parties have not addressed this issue.

Unambiguous language appearing in § 522(f)(1)(A) and § 522(F)(2)(A) makes clear that debtor in this instance may avoid the judicial lien of Iron and Glass Bank only in part—i.e., to the extent of the impairment of debtor's exemption. Section 522(f)(1)(A) permits a debtor to avoid the fixing of a lien on an interest of the debtor in property "to the extent of impairment of the exemption." 11 U.S.C. § 522(f)(1)(A). Section 522(f)(2)(A) provides that a judicial lien impairs an exemption "to the extent that" the sum of the judicial lien, all other liens against the property, and the amount of the exemption debtor could claim if there were no liens against the property exceeds the value of debtor's interest in the property in the absence of any liens. 11 U.S.C. § 522(f)(2)(A)..

Avoidance of a judicial lien pursuant to § 522(f)(1)(A) is not an "all-or-nothing" matter. Only that portion of a judicial lien which "interferes" with—i.e., impairs—the exemption debtor has taken in property may be avoided. That portion of the lien which does not so "interfere" is not avoidable. *East Cambridge Savings Bank v. Silveira (In re Silveira)*, 141 F.3d 34, 36–38 (1st Cir.1998); also *Wachovia Bank & Trust Co. v. Opperman (In re Opperman)*, 943 F.2d 441, 443–44 (4th Cir.1991).

We have determined that the amount of the judicial lien of Iron and Glass Bank in conjunction with the amount of all other liens and the maximum exemption debtor could take in the property in the absence of any liens exceeds the value debtor's interest in the property would have in the of any liens by $70,172.34. This, we conclude, is the extent to which the judicial lien of Iron and Glass Bank impairs debtor's exemption and therefore is the extent to which debtor may avoid its lien pursuant to § 522(f)(1)(A).

As for the remaining $11,616.34 of Iron and Glass Bank's lien ($81,788.68—

$70,172.34 = $11,616.34), it is not avoidable. After the amount of the two mortgages ($135,958.66) and the amount of the exemption debtor could take in the property absent any liens ($17,425.00) are applied against the stipulated value of the property ($165.000.00), $11,616.34 remains ($165,000.00—$135,958.66—$17,425.00 = $11,616.34). The value of debtor's interest in the property is of sufficient value to "accommodate" the judicial lien of Iron and Glass Bank to this extent before impairment occurs.

An appropriate order shall issue.

### ORDER OF COURT

AND NOW at Pittsburgh this **13th** day of *May,* 2004, for reasons set forth in the accompanying memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that the judicial lien of Iron and Glass Bank be and hereby is **AVOIDED** to the extent of $70,172.34. Said judicial lien is **NOT AVOIDED** in the amount of $11,616.34.

It is **SO ORDERED.**